# EXHIBIT 1

FEDERAL DEPOSIT INSURANCE CORPORATION
WASHINGTON, D.C.

| | |
|---|---|
| In the Matter of<br><br>ROBERT S. CATANZARO and<br>JOHN C. PONTE,<br>as institution-affiliated parties of<br><br>Independence Bank<br>(Insured State Nonmember Bank) | DECISION AND ORDER<br>ON MOTION FOR<br>INTERLOCUTORY REVIEW<br><br>FDIC-22-0109e<br>FDIC-22-0110k<br>FDIC-22-0112e<br>FDIC-22-0113k<br>FDIC-22-0143b |

## I.     INTRODUCTION

Before the Administrative Officer of the Federal Deposit Insurance Corporation (FDIC), pursuant to authority delegated by the FDIC Board of Directors (Board) in 12 C.F.R. Part 308 App A § 308.102(b)(2)(ii), is Respondent John C. Ponte's motion for interlocutory review of an Administrative Law Judge (ALJ) order denying Ponte's Motion for Summary Disposition (Mot.) on Ponte's status *vel non* as an institution-affiliated party of Independence Bank. Ponte argues that he acted at all relevant times as an independent contractor and does not fall within the definition of "institution-affiliated party" set forth in 12 § 1813(u).

The ALJ issued the Order denying Ponte's motion on June 10, 2024. On June 20, 2024, Ponte filed a Motion for Interlocutory Review. The ALJ referred this matter to the Board on June 27, 2024, pursuant to 12 C.F.R. Part 308 App A § 308.28(c). For the reasons stated below, I conclude that the petition should be denied.

## II.    BACKGROUND

The Bank began operating in 2003. Beginning in 2013, the Bank began focusing a significant part of its business on Small Business Administration (SBA) loans that provided working capital to borrowers not eligible for traditional bank financing. That SBA initiative was known as the Small Loan Advantage (SLA) program. The Bank's primary source of SLA loans was Ponte's company Ponte Investments, LLC. In 2017, the FDIC issued a Report of Examination raising a concern about the Bank's SLA

program, noting that its loan growth had far exceeded initial projections and that the Bank had not established an appropriate risk management framework for the program. These findings led to a Consent Order between the FDIC and the Bank in 2019 under which the Bank agreed to address deficiencies in the program; a 2021 agreement between the Bank and the SBA discontinuing the Bank's SBA lending; and ultimately the Bank's announcement that it would not accept any new deposits and would seek to wind down its business. In 2022, the FDIC's Division of Depositor and Consumer Protection found that the Bank had improperly charged fees to SBA borrowers for services never rendered and had violated SBA regulations in numerous respects.

In 2023, the FDIC initiated multiple enforcement actions pertaining to the Bank and Ponte. It issued this action against Ponte as well against Robert Catanzaro, the Bank's CEO, and Danielle Desrosiers, the Bank's former Executive Vice President, seeking an order of prohibition, civil money penalties, and (as to Ponte alone) restitution of fees improperly assessed against SBA borrowers. The FDIC later filed a Notice of Charges against the Bank alone, likewise seeking restitution.

Ponte moved for summary disposition in this matter on March 12, 2004, contending that he was not an institution-affiliated party (IAP) of the Bank and that the FDIC therefore had no jurisdiction over him under 12 U.S.C. § 1818. Enforcement Counsel opposed the motion, arguing that the record showed sufficient connections between the Bank and Ponte to make the latter an IAP, and the ALJ agreed with Enforcement Counsel and denied the motion on June 10, 2024. Ponte moved for leave to seek interlocutory review.

## III. DISCUSSION

### A. Review Standards

Interlocutory review of ALJ orders is an "extraordinary remedy" that is "generally not favored." *See, e.g.*, *In the Matter of Randolph W. Lenz*, 2004 WL 2585214, *3-4 (FDIC Sept. 21. 2004) (citations omitted); *In the Matter of Doolin Security Savings*, 1994 WL 169620, *2 (OTS Feb. 9, 1994). Nevertheless, the Board has discretion to exercise interlocutory review of an ALJ's ruling under 12 C.F.R. § 308.28(b) upon a finding that at least one of four criteria is satisfied. The four criteria are:

> (1) The ruling involves a controlling question of law or policy as to which substantial grounds exist for a difference of opinion;
> (2) Immediate review of the ruling may materially advance the ultimate termination of the proceeding;
> (3) Subsequent modification of the ruling at the conclusion of the proceeding would be an inadequate remedy; or
> (4) Subsequent modification of the ruling would cause unusual delay or expense.[1]

Ponte sought interlocutory review under the first, second, and third criteria. Motion for Interlocutory Review at 2.

The "extraordinary remedy" of immediate review is not warranted because "substantial grounds for a difference of opinion" do not exist, for purposes of the current procedural posture, on Ponte's IAP status. As the ALJ found, there are unquestionably disputed issues of fact as to whether Ponte was an IAP of the Bank that preclude summary disposition for Ponte, and Ponte identifies no errors in the ALJ's reasoning. Furthermore, immediate review would not materially advance the ultimate termination of the matter, and review of the ALJ's final Recommended Decision at the conclusion of the proceeding would be an adequate remedy.

---

[1] 12 C.F.R. § 308.28(b)(1)-(4).

B.     **There Are Disputed Issues of Fact on Ponte's IAP Status**

Summary disposition in an enforcement proceeding under § 1818 is appropriate only when there is no genuine issue as to the material facts at issue in the proceeding and the movant is entitled to judgment as a matter of law, 12 C.F.R. Part 308 App. A § 308.38(a). Evidence must be viewed "in the light most favorable to" the nonmovant," and evidentiary submissions by the nonmovant that rise above mere denials must be accepted as true.

An institution-affiliated party is defined in the FDI Act to include, *inter alia*:

> (3) [A]ny shareholder . . . consultant, joint venture partner, and any other person as determined by the appropriate Federal banking agency (by regulation or case-by-case) who participates in the conduct of the affairs of an insured depository institution; and
> (4) [A]ny independent contractor (including any attorney, appraiser, or accountant) who knowingly or recklessly participates in (A) any violation of any law or regulation; (B) any breach of fiduciary duty; or (C) any unsafe or unsound practice, which caused or is likely to cause more than a minimal financial loss to, or a significant adverse effect on, the insured depository institution.

12 U.S.C. § 1813(u)(3-4). If either of these definitions applies to Ponte, he is an IAP and a proper party in the enforcement proceeding. The facts submitted to the ALJ demonstrated that both apply.[2]

1.     Ponte Participated in the Conduct of the Affairs of the Bank

The Board's prior decisions have established that independent contractors with extensive involvement in an insured institution's decision making may be deemed to "participate in the conduct of the affairs" of that institution. Specifically, in *In the Matter of Frank E. Jameson*, FDIC-89-83e, 1990 WL 711218 (June 12, 1990), the Board addressed this same text (in the related context of a prohibition under § 1818(e)(2), which was then drafted to address a "person participating in the conduct of the affairs" of an insured bank), and stated that the Board would "look to the nature of the work performed, the ability of a respondent to cause harm to an institution, and the relationship between the role performed by respondent and the institution." *Id.* at *5. In *In the Matter of Jules B. LeBlanc, III*, FDIC-94-17i, 1995 WL 702094 (Oct. 11, 1995), the Board looked more broadly to whether a nominally

---

[2] The ALJ noted that, following Enforcement Counsel's submissions in response to Ponte's Motion for Summary Disposition, Ponte sought to file a five-page letter styled as a renewed request for a hearing on the motion. The ALJ's ground rule allow for replies in support of a motion for summary disposition upon a showing of good cause, but Ponte did not attempt to make a showing of good cause, and the ALJ declined to consider Ponte's reply submission. As that submission is not part of the materials considered by the ALJ, the Board does not consider it either.

unaffiliated party "was in a position to materially influence the activities of the Bank." *Id.* at \*5. Under either standard, disputed facts clearly preclude summary disposition for Ponte on this issue.

As Enforcement Counsel highlights, the ALJ found—and Ponte does not dispute—the Bank's business was largely if not entirely devoted to SBA lending, and Ponte's company, Ponte Investments, was responsible for approximately 80 percent of the Bank's SBA loan originations. Ponte therefore supplied much of the Bank's earnings and profits, and Enforcement Counsel points to salient examples of his wielding that influence, for instance in causing Bank officers to reconsider their rejection of a specific loan, and in threatening to withdraw his business from the Bank if his requests were not heeded. Enforcement Counsel's Statement of Material Facts ("EC Statement") ¶¶ 29, 68.[3] At one point, when the Bank declined a loan referral from Ponte's company, Ponte declared that he would terminate his relationship with the Bank unless the president was removed from oversight of SBA loans; the Bank complied, and the relationship continued. *Id.* ¶¶ 34-35. Furthermore, while Ponte denies any role in the Bank's review, underwriting, and approval of loans, Mot. at 13, there are genuine disputes of fact on that issue: evidence proffered by Enforcement Counsel indicates that Ponte "lobb[ied] Bank personnel at virtually all levels . . . to approve and fund" SBA loans, and went so far as to "dictate to the Bank what underwriters could work on the SBA Loans that he referred." *Id.* ¶¶ 28, 30.

Just as the loan review consultant in *Jameson* was an IAP because his activity was an "integral part of the Bank's loan process," such that his view of loan documentation "signaled its final approval for funding or the need for further documentation," 1990 WL 711218 at \*5, the facts submitted by Enforcement Counsel show that Ponte had a broadly influential role in causing the Bank to approve his company's SBA loans—indeed, Ponte even caused the Bank to alter its decision-making process to a form more deferential to him.[4] The lack of a formal title for the Respondent within the bank did not preclude IAP status for the consultant in *Jameson*, nor did the continued nominal responsibility of bank

---

[3] Ponte did not submit a response to Enforcement Counsel's Statement of Material Facts
[4] Specifically, Ponte demanded that a bank official who had rejected one of his company's loan referrals be removed from the review process, and the Bank acceded to this request, giving the CEO direct responsibility for the SBA lending program. EC Statement ¶ 35.

officials for final approval of the loans. *Id.* Ponte's ostensible outsider status likewise does not preclude IAP status here.

For the same reasons, Ponte "was in a position to materially influence the activities of the Bank" under *LeBlanc*. The Board there did not find the test satisfied because there was insufficient evidence that the respondent (a borrower) played a direct role in the bank's decision-making that triggered a "responsibility to act on behalf of or in the best interest of the Bank," but the facts set forth above establish a genuine dispute as to whether Ponte's involvement in the SBA loan program was so extensive that he assumed such a duty.

There is likewise, at the very least, a genuine dispute over whether Ponte had the "ability . . . to cause harm to" the Bank, *id.*, or "was in a position to materially influence the activities of the Bank." *LeBlanc*, 1995 WL 702094 at *5. The dominant role that SBA lending played in the Bank's business plan meant that regulatory violations or other misconduct in connection with those lending activities, when detected, would significantly affect the Bank's prospects. Indeed, that is what occurred: Ponte's company's lending practices were found to be in violation of SBA regulations, leading to a Consent Order in 2019 restricting the Bank's activities. Statement of Material Facts ¶ 33; EC Statement ¶ 33. Ponte disputes whether the improper practices were ultimately attributable to Bank personnel, but as Ponte is the movant here and inferences are drawn in favor of the nonmovant, the dispute clearly called for the denial of his Motion for Summary Disposition and thus denial of the motion for interlocutory appeal is called for as well.

### 2. Ponte Participated in Violations Likely to Cause a Risk of Loss to the Bank.

There are also, at a minimum, genuine disputes of fact as to whether Ponte knowingly or recklessly participated as an independent contractor in violations of law or regulations, or unsafe or unsound practices, that caused or were likely to cause a risk of loss to the Bank. 12 U.S.C. § 1813(u)(4). The existence of those genuine disputes is not a controlling question of law or policy presenting substantial grounds for differences of opinion for purposes of § 308.28(b).

### a. There Are Genuine Disputes of Fact as to Ponte's Independent Contractor Status.

In his Motion for Summary Disposition, Ponte contested his independent contractor status on the grounds that his company was a contractor with the Bank and he was not. MSD at 11. Enforcement Counsel argued in response that Ponte participated directly and individually in the conduct at issue, and further argued that, as the sole owner of the company who had absolute control over all of its activities, Ponte should be deemed to be a contractor in his individual capacity. EC Counterstatement of Material Facts ("Counterstatement") ¶ 8. Ponte does not dispute the extent of that control, nor does he dispute that *alter ego* status, if found, would be relevant for purposes of the § 1813(u)(4) IAP analysis, and it appears that the Board has not previously had occasion to address that issue. For present purposes, there are genuine disputes of fact as to Ponte's independent contractor status, and the Board has not been shown a substantial ground for a difference of opinion on that status.

        b.       There Are Genuine Disputes of Fact as to Ponte's Participation in Violations and Unsafe and Unsound Practices.

As to whether Ponte participated in violations of law or regulations for purposes of § 1813((u)(4)(A), or unsafe and unsound practices under § 1813(u)(4)(C), the evidence of those violations and practices is extensive, and is largely conceded by Ponte. Instead, Ponte argues at length that Bank personnel were aware of those violations and participated in them, Mot. at 11-28, but that is irrelevant for present purposes.

For instance, it is undisputed that Ponte and his company offered so-called "bridge loans" to SBA borrowers awaiting approval of their official loans, and Enforcement Counsel cites evidence that Ponte arranged for payment of the bridge loans from the proceeds of the approved loans, conduct that, Enforcement Counsel credibly contends, was prohibited by SBA regulations. Counterstatement ¶ 16; *see* 13 C.F.R. §§ 120.140, 120.201. Ponte and his company also did not disclose the bridge loans in the applications sent to the Bank, again in contravention of SBA regulations. *Id.* ¶ 15; *see* 13 C.F.R. § 120.140(a), (e). Evidence in the record indicates that Ponte and his company also falsified borrower information to increase the chances that the loans would be approved. Ponte's sole defense of the bridge loan practices is that the Bank was aware of them, Mot. at 15-16, which does not excuse Ponte's participation in those violations.

Enforcement Counsel also cites evidence that the fees charged by Ponte and his company violated SBA regulations. Specifically, such fees were capped at 2 percent of the total loan amount, but evidence in the record indicates that Ponte arranged for fees that significantly exceeded that amount. EC Statement ¶ 27; *see* 13 C.F.R. §§ 103.5, 120.221. Here as well, Ponte argues that the Bank was aware of the fees charged and did not tell Ponte to stop them, Mot. at 16-17, but that, again, does not negate his participation in the violations, and the relative responsibility of the Bank and Ponte and his company for the violations cannot be resolved at this stage of the proceedings.

Enforcement Counsel argued, Opp. at 23-25, the ALJ found, Order No. 32 at 23, and the Board agrees that the above violations, if proven, would constitute unsafe and unsound banking practices under § 1813(u)(4)(C). Furthermore, prior decisions of the Board show that concealment of banking practices and falsification of banking records is unsafe and unsound. *In the Matter of Brian M. Madison*, FDIC-17-0248e, 2018 WL 2427328, *1 (FDIC Apr. 3, 2018); *Jameson*, 1990 WL 711218, at *7-8. Enforcement Counsel points to repeated examples of such concealment and falsification by Ponte and his company here. Counterstatement ¶¶ 57, 67, 85, 105, 114. The record thus contains, at a minimum, genuine disputes of fact as to Ponte's participation in regulatory violations and unsafe and unsound practices, and Ponte has not identified substantial grounds for a difference of opinion on that issue.

          c.       There Are Genuine Disputes of Fact as to Ponte's Scienter.

For similar reasons, Ponte is not entitled to summary disposition as to his knowledge of the violations and unsafe and unsound practices for purposes of the "knowingly or recklessly" element. Ponte claims that he was not "experienced with SBA lending" and "reasonably relied on the instruction and guidance provided by" the Bank." Mot. at 9. Specifically, he asserts that he was not "instructed or advised" by the Bank that his company's practices "did not comply with any SBA policy, procedure, and/or guideline," and further claims that the sundry violations described above were at least in part directed by the Bank. *Id.* at 16. But Ponte acknowledged his "more than two decades" of lending experience in his motion, Mot. at 9, and his purported lack of experience in SBA lending specifically did not excuse him from familiarizing himself with the SBA's regulations, particularly given the large

volume of loans he referred. EC Opposition to Motion for Summary Disposition ("Opp.") at 14 nn.55-56 (Ponte referred nearly 30,000 SBA loans to the Bank, totaling approximately $4.5 billion). The Board has held so before:

> Respondent . . . attempt[s] to excuse his behavior on the grounds that he is not a banker and is not familiar with applicable rules and regulations not only fails to provide a legally sufficient defense, but rather, provides a further indication of his reckless behavior. Respondent is an experienced professional. He thus cannot claim general ignorance or inability to learn the appropriate rules, regulations, standards and guidelines of his new venture. That Respondent accepted responsibilities in connection with his client's banking ventures without appropriate preparation indicates his reckless disregard for the special nature of the banking industry and the financial well-being of the banks with which he was involved.

*In the Matter of * * **, FDIC-85-25e *et al.*, 1987 WL 451206, *15 (Feb. 3, 1987); *see also Cavallari v. OCC*, 57 F.3d 137, 142 (2d Cir. 1995) ("conscious indifference" to a "known or obvious risk of a substantial harm" supports recklessness). Likewise, here, Ponte's "the-Bank-was-in-charge" defense did not excuse him from basic familiarity with SBA lending requirements, and there are genuine disputes of fact as to whether his participation in the violations of those requirements met the "knowing or reckless" standard. No familiarity with SBA regulations was required for Ponte to comply with the SBA's disclosure requirements, as those requirements were set forth on the instructions for Form 159. Yet Ponte or one of his employees regularly signed that form without making required disclosures. EC Counterstatement of Material Facts ("Counterstatement") ¶¶ 29-31; EC Statement ¶¶ 61, 104-105, 123. Furthermore, as the ALJ pointed out, the bare fact that Ponte professes ignorance of the SBA's regulations after many years of originating and selling SBA loans itself indicates, at a minimum, reckless conduct. Order No. 32 at 24. Ponte is therefore not entitled to summary disposition on this element of § 1813(u)(4), and his argument does not offer substantial grounds for a difference of opinion.

        d.    There Are Genuine Disputes of Fact as to Actual or Threatened Loss to the Bank.

Summary disposition is similarly not called for on the "caused or is likely to cause more than a minimal financial loss" element of § 1813(u)(4). That the Bank suffered extensive harm as a result of Ponte and his company's violations of the SBA lending regulations, and that Ponte should have anticipated those harms, is evident from the record. As Enforcement Counsel noted, Ponte's bridge-loan

schemes led to a significantly elevated default rate on the Bank's SBA loans. Counterstatement ¶¶ 36-38. The absence of SBA guarantees for noncompliant loans meant that it was reasonable to anticipate that the Bank would absorb millions of dollars in losses on the loans Ponte referred, along with refunding millions in impermissible fees. *Id.* ¶¶ 39-43. The suspension of the Bank's SBA lending authority arose in substantial part from these violations. *Id.* ¶ 44. Ponte does not appear to dispute this point. Thus, he is not entitled to summary disposition on this issue, and there are no substantial grounds for a difference of opinion on this element.

Accordingly, because there are disputed issues of fact on every aspect of Ponte's IAP status under the applicable statutory tests, the ALJ's denial of his Motion for Summary Disposition was well supported and does not present substantial grounds for a difference of opinion, and interlocutory review is not called for.

### C.   Interlocutory Review Would Not Materially Advance the Conclusion of This Proceeding

The "materially advance the conclusion of the proceeding" criterion under § 308.28(b) does not favor immediate review either. The Board believes that it would be preferable to review the evidence regarding Ponte's IAP status based on a full record, and again notes that Ponte did not submit a reply brief in support of his motion; furthermore, he filed no response to Enforcement Counsel's counterstatement of facts, and his own statement of facts relied solely on his own affidavit and was not supported by any other evidence or documentation. It would be premature for the Board to make a final determination on Ponte's IAP status without the benefit of each side's full factual showings. *See In the Matter of Rick A. Jenson*, FDIC-95-65e, 1997 WL 33774615, *3 (FDIC Apr. 7, 1997) (preferable for Board to conduct review based on "complete record"). The Board further notes that, even if review were granted and Ponte found not to be an IAP, the proceeding would continue as to the remaining Respondent, and thus immediate review would not advance the termination of the entire proceeding. Hence, interlocutory review is not warranted on this ground.

### D. Review at the Conclusion of This Proceeding Would Be An Adequate Remedy

Finally, denying interlocutory review would not make the ultimate remedy for Ponte inadequate. Ordinary litigation costs "are not the type of expense or irreparable injury which the procedures under Rule 28 are designed to avoid." *In the Matter of the Citizens Bank of Clovis*, FDIC-91-406b, 1992 WL 812920, *2 (FDIC May 5, 1992). Ponte identifies no specific reasons why a decision on his IAP status at the conclusion of the proceeding, reviewed by the Board via the filing of exceptions, would be an inadequate remedy for him, and the Board is not aware of any such reasons. This factor does not merit interlocutory review.

## IV.   CONCLUSION

Ponte has not met the standards for interlocutory review under 12 C.F.R. Part 308 App. A § 308.28(b). His motion for interlocutory review should be denied.

**ORDER**

For the reasons set forth previously, it is hereby ORDERED that Ponte's Motion for Interlocutory Review is DENIED.

Pursuant to delegated authority, upon the advice and recommendation of the Deputy General Counsel, Litigation Branch.

Entered at Washington, D.C. this 15th day of August, 2024.

                                                _____
                                                Debra A. Decker
                                                Administrative Officer

## CERTIFICATE OF SERVICE

On August 15, 2024, I served a copy of the foregoing **Decision and Order** upon the following individuals via email:

Counsel for Respondent Ponte:
Christopher Mulhearn
1300 Division Road, Suite 304
West Warwick, RI 02893
cmulhearn@mulhearnlawri.com

Robert Corrente
100 Westminster Street, Suite 710
Providence, RI 02903
rcorrente@whelancorrente.com

Counsel for Respondent Catanzaro:
Charles Tamuleviz
149 West River Street, Suite 1E
Providence, RI 02904
chuck@mclaughlinquinn.com

Enforcement Counsel:
David A. Schecker
Matthew H. Doyle
15 Braintree Hill Office Park
Braintree, MA 02184
dschecker@fdic.gov
madoyle@fdic.gov

Kent Oz
Rikki Simmons
350 Fifth Avenue, Suite 1200
New York, NY 10118
koz@fdic.gov
risimmons@fdic.gov

Walter C. Siedentopf
10 10th Street NE, Suite 900
Atlanta, GA 30309
wasiedentopf@fdic.gov

Seth P. Rosebrock
Frank Salamone
Graham N. Rehrig
550 17th Street NW
Washington, DC 20429
srosebrock@fdic.gov
fsalamone@fdic.gov
grehrig@fdic.gov

Office of Financial Institution Adjudication
3501 N. Fairfax Drive, Suite VC-D8116
Arlington, VA 22226-3500
ofia@fdic.gov

_____
Angela M. Dean
Board Support Specialist