UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN C. PONTE | |
| Plaintiff, | |
| vs. | Case No.: 1:24-cv-02379 |
| FEDERAL DEPOSIT INSURANCE CORPORATION, *et al*. | |
| Defendants. | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

COUNTS OF THE COMPLAINT ....................................................................................... 1

ARGUMENT ....................................................................................................................... 2

    I.   THE STANDARD OF REVIEW ................................................................................... 2

    II.  THE COURT HAS SUBJECT MATTER JURISDICTION ............................................. 3

        A.   The Earlier Cases Do Not Strip Jurisdiction from This Court.................................. 4

            1.   *Ponte I* Does Not Preclude this Suit ...................................................... 4

            2.   *Ponte II* Does Not Strip this Court of Jurisidiction ................................ 4

        B.   12 U.S.C. § 1818(i)(l) Does Not Strip Jurisdiction from this Court......................... 12

        C.   *Axon/Cochran* Applies Here and Not Only to "Implicit" Jurisdictional Bars........... 15

        D.   If Congress Intended to Subject Ponte to a Fact Finding Without Jury on These Claims, Section 1818(i)(1) Is Unconstitutional ....................................................... 19

    III. PONTE'S CLAIM ON COUNT III STATES A CLAIM AND HE IS ENTITLED TO A JURY TRIAL FOR THE VAST CIVIL DAMAGES DEFENDANTS SEEK ....................................................... 20

        A.   FDIC's Claims Sound in Law, Not Equity ............................................................ 21

        B.   No Public Right Is Implicated ............................................................................... 24

    IV. COUNT I STATES A CLAIM ................................................................................. 26

    V.  COUNT II STATES A CLAIM ................................................................................. 27

    VI. COUNT IV STATES A CLAIM ............................................................................... 28

CONCLUSION .................................................................................................................. 28

CERTIFICATE OF COMPLIANCE .................................................................................. 30

CERTIFICATE OF SERVICE ........................................................................................... 31

# TABLE OF AUTHORITIES

**Cases**

*Alabama v. U.S. Army Corps of Eng'rs*,
704 F. Supp.3d 20 (D.D.C. 2023) ........................................................................... 10

*Am. Inst. for Int'l Steel, Inc. v. U.S.*,
376 F.Supp.3d 1335 (Ct. Int'l Trade 2019) ............................................................ 18

*Am. Nat'l Ins. Co. v. FDIC*,
642 F.3d 1137 (D.C. Cir. 2011) ............................................................................... 2

*Apotex, Inc. v. FDA*,
393 F.3d 210 (D.C. Cir. 2004) ............................................................................ 6, 7

*Atlas Roofing Co. v. OSHA*,
430 U.S. 442 (1977) ................................................................................................. 8

*Axon Enter., Inc. v. FTC* and *SEC v. Cochran*,
598 U.S. 175 (2023) ...................................................................................... passim

*Bank of La. v. FDIC*,
919 F.3d 916 (5th Cir. 2019) ................................................................................. 18

*Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin. Inc.*,
502 U.S. 32 (1991) ........................................................................................... 13, 14

*Blitz v. Donovan*,
740 F.2d 1241 (D.C. Cir. 1984) ............................................................................. 20

*Bobby v. Bies*,
556 U.S. 825 (2009) ................................................................................................. 9

*Bohon v. FERC*,
92 F.4th 1121 (2024) .............................................................................................. 18

*Bonan v. FDIC*,
No. 4:23-cv-8, 2023 WL 156852 (E.D. Mo. Jan. 11, 2023) .................................. 12

*Burgess v. FDIC*,
639 F. Supp.3d 732 (N.D. Tex. 2022) ......................................................... 4, 12, 16

*Campaign Legal Center v. Federal Election Commission*,
No. 22-cv-3319, 2023 WL 6276634 (D.D.C. Sept. 26, 2023) .......................... 6, 7, 8

*Canonsburg Gen. Hosp. v. Burwell*,
807 F.3d 295 (D.C. Cir. 2015) ................................................................................. 6

*Cheek v. United States*,
498 U.S. 192 (1991) ............................................................................................... 22

*CIC Srvs., LLC v. IRS*,
593 U.S. 209 (2021) ............................................................................................... 15

*Collins v. Yellin*,
594 U.S. 224 (2021) ......................................................................................... 26, 27

*Comm'r of Internal Revenue v. Sunnen,*
  333 U.S. 591 (1948) ............................................................................................ 8

*Crude Co. v. FERC,*
  923 F. Supp. 222 (D.D.C. 1996) ...................................................................... 22

*Dist. Title v. Warren,*
  No. 14-1808, 2015 WL 7180200 (D.D.C. Nov. 13, 2015) ............................... 24

*Donelson v. Fed. Bureau of Prisons,*
  No. 15-5136, 2015 WL 9309944 (D.C. Cir. Dec. 7, 2015) ................................. 3

*Donelson v. U.S. Bureau of Prisons,*
  82 F. Supp.3d 367 (D.D.C. 2015) ....................................................................... 3

*Exxel/Atmos, Inc. v. NLRB,*
  28 F.3d 1243 (D.C. Cir. 1994) ......................................................................... 28

*First Nat'l Bank of Scotia v. United States,*
  530 F. Supp. 162 (D.D.C. 1982) ...................................................................... 15

*Granfinanciera, S.A. v. Nordberg,*
  492 U.S. 33 (1989) ........................................................................................... 21

*Great-West Life & Annuity Ins. Co. v. Knudsen,*
  534 U.S. 204 (2002) ......................................................................................... 23

*Grupo Mexicano de Desarollo S.A., v. Alliance Bond Fund,*
  527 U.S. 308 (1999) ......................................................................................... 23

*Herrera v. Wyoming,*
  587 U.S. 329 (2019) ....................................................................................... 8, 9

*Howard v. Goodman,*
  No. 20-cv-2187, 2021 WL 4061143 (D.D.C. Sept. 7, 2021) ........................ 2, 3

*Humphrey's Executor v. United States,*
  295 U.S. 602 (1935) ......................................................................................... 26

*Jackson v. Off. of the Mayor of D.C.,*
  911 F.3d 1167 (D.C. Cir. 2018) ....................................................................... 11

*Jolley v. United States,*
  No. 21-5181, 2024 WL 1521633 (D.C. Cir. Apr. 9, 2024) ......................... 11, 13

*Kokesh v. SEC,*
  581 U.S. 455 (2017) ......................................................................................... 23

*Leedom v. Kyne,*
  358 U.S. 184 (1958) ......................................................................................... 14

*Limbach v. Hooven & Allison Co.,*
  466 U.S. 353 (1984) ........................................................................................... 8

*Liu v. SEC,*
  591 U.S. 71 (2020) ........................................................................................... 23

*Lockerty v. Phillips*,
   319 U.S. 182 (1943) ................................................................................................ 20

*Loper Bright Enters.. v. Raimondo* and *Relentless v. Dep't of Com.*,
   144 S.Ct. 2244 (2024) ...................................................................................... 1, 10

*Lucia v. SEC*,
   585 U.S. 237 (2018) .................................................................................................. 1

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) .................................................................................................. 2

*Martin v. Dep't of Justice*,
   488 F.3d 446 (D.C. Cir.2007) .................................................................................. 6

*McBryde v. Comm. to Rev. Cir. Council Conduct*,
   264 F.3d 52 (D.C. Cir. 2001) .................................................................................. 13

*McBryde v. Comm. to Rev. Cir. Council Conduct*,
   83 F. Supp.2d 135 (D.D.C. 1999) ......................................................................... 13

*McCulloch v. Libbey–Owens–Ford Glass Co.*,
   403 F.2d 916 (D.C. Cir. 1968) ............................................................................... 14

*Meta Platforms, Inc. v. FTC*,
   No. 24-5054, 2024 WL 1549732 (D.C. Cir., Mar. 29, 2024) ................................ 26

*Minnesota v. Mille Lacs Band of Chippewa Indians*,
   526 U.S. 172 (1999) .................................................................................................. 8

*Montana v. United States*,
   440 U.S. 147 (1979) .................................................................................................. 8

*Murray v. Hoboken Land & Imp. Co.*,
   59 U.S. 272 (1856) ................................................................................................. 24

*Nat'l Ass'n of Home Builders v. EPA*,
   786 F.3d 34 (D.C. Cir. 2015) ................................................................................. 11

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
   491 U.S. 350 (1989) ............................................................................................... 18

*Newdow v. Bush*,
   355 F. Supp.2d 265 (D.D.C. 2005) ......................................................................... 7

*NLRB v. Creative Food Design Ltd.*,
   852 F.2d 1295 (D.C. Cir. 1988) ............................................................................. 28

*Otherson v. Dep't of Justice*,
   711 F.2d 267 (D.C. Cir. 1983) ................................................................................. 7

*Payne v. Becerra*,
   No. 22-00869, 2023 WL 3376630 (D.D.C. May 11, 2023) ..................................... 3

*Pinkney v. Dep't of Justice*,
   No. 06-0246, 2007 WL 2059129 (D.D.C. July 18, 2007) ..................................... 10

*Ponte v. FDIC*,
   No. 1:23-cv-00165-MSM-LDA, 2023 WL 6441976 (D.R.I. Oct. 3, 2023) ............................ 5

*Ponte v. Federal Deposit Ins. Corp.*,
   673 F. Supp.3d 145 (D.R.I. 2023) .................................................................................... 4

*Ramallo v. Reno*,
   114 F.3d 1210 (D.C. Cir. 1997) ....................................................................................... 20

*Riddler v. Off. of Thrift Supervision*,
   146 F.3d 1035 (D.C. Cir. 1982) ....................................................................................... 14

*SEC v. Jarkesy*,
   144 S.Ct. 2117 (2024) ........................................................................ 1, 9, 21, 25

*Seila Law LLC v. CFPB*,
   591 U.S. 197 (2020) ...................................................................................... 1, 27

*Shalala v. Ill. Council on Long Term Care, Inc.*,
   529 U.S. 1 (2000) .............................................................................................. 16

*Stern v. Marshall*,
   564 U.S. 462 (2011) .................................................................................... 21, 24

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
   574 U.S. 318 (2015) .............................................................................................. 25

*Thunder Basin Coal Co. v. Reich*,
   510 U.S. 200 (1994) .............................................................................................. 16

*Tull v. United States*,
   481 U.S. 412 (1987) .............................................................................................. 26

*UMC Dev., LLC v. District of Columbia*,
   401 F. Supp.3d 140 (D.D.C. 2019) .................................................................... 7

*United States v. Hansen*,
   599 U.S. 762 (2023) .............................................................................................. 25

*Ward v. Race Horse*,
   163 U.S. 504 (1896) ................................................................................................ 8

*Webster v. Doe*,
   486 U.S. 592 (1988) .............................................................................................. 16

*Williams v. Wash. Metro. Transit Auth.*,
   No. 17-cv-00890, 2019 WL 2058713 (D.D.C May 9, 2019) ............................ 2, 3

*Withrow v. Larkin*,
   421 U.S. 35 (1975) ................................................................................................ 28

**Statutes**

12 U.S.C. § 1818 ................................................................................................ 3, 5, 20

15 U.S.C. § 78d ........................................................................................................ 25

N.Y. Laws, 15th Sess., ch. 62 (1792) .................................................................... 26

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................................................................. 2

**Other Authorities**

John. O. McGinnis & Mike Rappaport,
*Emancipating the Constitution from Non-Originalist Precedent,*
Law & Liberty (July 11, 2024) ....................................................................................... 8

Russell A. Miller,
*The Purpose and Practice of Precedent: What the Decade Long Debate Over Stare Decisis
Teaches Us About the New Roberts Court,*
51 Hastings Const. L.Q. 231 (2024) ............................................................................... 8

Stuart Banner,
*What Causes New Securities Regulation? 300 Years of Evidence*,
75 Wash. U. L.Q. 849 (1997) ....................................................................................... 26

Plaintiff has already replied to the Defendants' opposition to his Motion for Temporary Restraining Order.  Defendants have also moved to dismiss the Complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim.  The Court should not grant dismissal on either ground.  The Complaint contains four counts, all firmly grounded in recent Supreme Court precedent.  *See Loper Bright Enters. v. Raimondo* and *Relentless v. Dep't of Com.*, 144 S.Ct. 2244 (2024) ("*Loper Bright/Relentless*"); *SEC v. Jarkesy*, 144 S.Ct. 2117 (2024) ("*Jarkesy*")*; Axon Enter., Inc. v. FTC* and *SEC v. Cochran*, 598 U.S. 175 (2023) ("*Axon/Cochran*"); *Seila Law LLC v. CFPB*, 591 U.S. 197 (2020) ("*Seila Law*"); *Lucia v. SEC*, 585 U.S. 237, 251 (2018) ("*Lucia*").  The Defendants, and indeed most federal agencies, appear to be engaged in administrative "massive resistance" to the holdings of those cases.  The Court should deny these motions and resist the invitation to reduce, cabin, or ignore these landmark holdings addressing Americans' civil rights.

## COUNTS OF THE COMPLAINT

The Complaint contains four counts.  First, Plaintiff's declaratory judgment claim asserts that the Federal Deposit Insurance Corporation ("FDIC") is made up of a multi-member board that cannot be upheld as constitutional under *Seila Law* because of the removal protections of the Defendant principal officials and that Plaintiff Ponte suffers harm by a sanction of extreme monetary penalties and an unconstitutional process. Complaint, Count I.  The second count seeks a declaratory judgment that because Defendant Whang is, under *Lucia*, subject to "dual for-cause" protection, she cannot constitutionally preside over an administrative enforcement proceeding such as the one the FDIC is inflicting on Plaintiff.  Complaint, Count II.  The third count is based on *Jarkesy* and asks this Court to declare that Plaintiff Ponte is being subject to a non-jury adjudication of common law claims that require a jury under the Seventh Amendment.  Complaint,

Count III. The final count is a straightforward due process declaratory action that the tribunal is unlawful and not neutral because it does not separate the prosecutorial and adjudicative functions, and all of the cumulative constitutional infirmities combine to make the entire proceeding, in essence, unfit to be endured under constitutional law. Complaint, Count IV.

## ARGUMENT

### I.   THE STANDARD OF REVIEW

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows the defendant to move to dismiss an action for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Because federal district courts are courts of limited jurisdiction it can be "presumed that a cause lies outside [of that] limited jurisdiction." *Howard v. Goodman*, No. 20-cv-2187, 2021 WL 4061143, at *2 (D.D.C. Sept. 7, 2021) (citation omitted). It is the plaintiff's burden to establish subject matter jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *see also Williams v. Wash. Metro. Transit Auth.*, No. 17-cv-00890, 2019 WL 2058723, at *4 (D.D.C May 9, 2019) (same). However, when determining a Rule 12(b)(1) motion, the court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged …." *Howard*, 2021 WL 4061143 at *2. (citing *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (denying FDIC motion to dismiss for lack of subject matter jurisdiction)). However, the initial burden of *res judicata* or collateral estoppel is on the defendant.

> Defendants have not supported this defense by citing a case (out of the several that plaintiff has filed) where the instant claim has been adjudicated on the merits. *See* Defs.' Mem. at 8 (concluding only that "several Federal Courts" have dismissed "identical Privacy Act and related constitutional claims against the same defendant"). " 'The burden is on the party asserting preclusion to show actual decision of the specific issues involved,' " *Gates v. District of Columbia*, 66 F.Supp.3d 1, 11, 2014 WL 7330945, at *4 (D.D.C. Aug. 29, 2014), quoting *Major v. Inner City Prop. Mgmt., Inc.*, 653 A.2d 379, 382 (D.C.1995), and it "is not this

court's role to sift through" the record (or the reporters) to identify a case that might satisfy the foregoing requirements, *Akers v. Liberty Mut. Group*, 744 F.Supp.2d 92, 98 (D.D.C.2010). Hence, the motion to dismiss on res judicata grounds is denied.

*Donelson v. U.S. Bureau of Prisons*, 82 F. Supp.3d 367, 371 (D.D.C. 2015), *aff'd sub nom.*

*Donelson v. Fed. Bureau of Prisons*, No. 15-5136, 2015 WL 9309944 (D.C. Cir. Dec. 7,

2015). If it lacks subject matter jurisdiction must a court dismiss the action.  *Howard*, 2021

WL 4061143 at *2.  Because it is jurisdictional, the court should address the Rule 12(b)(1)

motion before a motion under Rule 12(b)(6).  *Payne v. Becerra*, No. 22-00869, 2023 WL

3376630, at *2 (D.D.C. May 11, 2023).

This Court has stated the Rule 12(b)(6) standard as follows:

> To withstand a motion to dismiss under Rule 12(b)(6), the court must find that the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). … Factual allegations are not required to be "detailed," but pursuant to the Federal Rules, they must be more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]– that the pleader is entitled to relief," and the case can be dismissed. *Id.* at 679 (alteration in original) (internal quotation marks omitted).

*Williams*, 2019 WL 2058723 at *4 (citation omitted).

## II.  THE COURT HAS SUBJECT MATTER JURISDICTION

The Defendants make two arguments under Rule 12(b)(1), and neither is meritorious.  The

first is that these claims are precluded by previous cases filed in the Federal District Court for the

District of Rhode Island and *res judicata* or collateral estoppel applies.  The second is that

12 U.S.C. § 1818(i)(1) divests this Court of jurisdiction over the claims.

**A.      The Earlier Cases Do Not Strip Jurisdiction from This Court**

The Government wrongly argues that two pre-*Jarkesy* decisions in Ponte's prior cases, which found no subject matter jurisdiction, bar this suit. The first case, however, did not address the issues presented here and both cases have been overcome by significant Supreme Court decisions.

**1.   *Ponte I* Does Not Preclude this Suit**

The Government argues that Ponte is barred from bringing this suit because two pre-*Jarkesy* decisions. Both cases found no subject matter jurisdiction. One of these cases explicitly rejected the *Burgess v. FDIC*, 639 F. Supp.3d 732 (N.D. Tex. 2022) ("*Burgess*") decision because Plaintiff had not raised a constitutional claim.  *Ponte v. FDIC*, 673 F. Supp.3d 145, 151 (D.R.I. 2023) ("*Ponte I*") ("At best, this case is distinguishable because the plaintiffs here have not raised such constitutional claims and instead have only has [sic] raised the statutory argument that Ponte is not an IAP of the Bank.").  *Burgess* is relied upon by Ponte in this suit, and constitutional claims are raised here. There can be no collateral estoppel or issue preclusion from an issue the court explicitly said was not before it and then said was dismissed "without prejudice" as to the 12(b)(1) claims.  *Id.* at 152 ("The dismissal of the remainder of the complaint, being on jurisdictional grounds pursuant to Rule 12(b)(1), is without prejudice.").  The claims in *Ponte I* are wholly factually and legally separate from the constitutional claims in this case and cannot in any way preclude this Court's jurisdiction.  Additionally, *Ponte I* was pre-*Axon/Cochran* and pre-*Jarkesy* and mentions neither case.

**2.   *Ponte II* Does Not Strip this Court of Jurisidiction**

Unsurprisingly, the next court to consider a challenge did not find that collateral estoppel

or issue preclusion barred a second filing.  *Ponte v. FDIC*, No. 1:23-cv-00165-MSM-LDA, 2023 WL 6441976 (D.R.I. Oct. 3, 2023) ("*Ponte II*").  Instead, it looked at the new claim with the new precedent.  *Id.* at *1–2.  That court reviewed the *Axon*/*Cochran* decision and determined that it applied only to "implied" divestment of jurisdiction and so did not change the previous outcome: dismissal.  *Ponte II* did consider an argument about jury rights but did not consider *Jarkesy* because that landmark, binding Supreme Court case was yet to be decided.  The *Ponte I* and *II* courts did not find the 5th Circuit's pre-*Jarkesy* nonbinding precedent persuasive in Rhode Island.  *Jarkesy*, however, adopted the 5th Circuit's reasoning rejected by the *Ponte I* and *II* courts, and it is a major change in the law that precludes collateral estoppel here.  Additionally, neither *Ponte* court dealt, at all, with anything like Count IV in this case—which asserts that the cumulative constitutional infirmities in the FDIC proceeding, taken together, are presently injuring Mr. Ponte.

While it is true that 12(b)(1) lack of subject matter jurisdiction cases can be issue-preclusive, they are not in this case, and the cases cited by the Government are inapposite of where this case stands.  In none of the cases cited by the Government did the facts and law change dramatically between the first and subsequent cases as they have here.  In this case, Count III of the Complaint is new, as is the argument that 12 U.S.C. § 1818(i)(1) does not divest this Court of jurisdiction over Plaintiff's jury right because if it did, it would make the Seventh Amendment a nullity and the statutory provision would, itself, be unconstitutional.  That claim is nowhere in any other case and in fact, only factual and legal changes of vast importance in the intervening time period made Plaintiff's current claim pellucidly clear.

First, *SEC v. Jarkesy*, 144 S.Ct. 2244, was issued on June 27, 2024.  Less than two weeks later, on July 8, 2024, Ponte moved before ALJ Jennifer Whang to insist on a jury trial in light of the opinion.  Verified Complaint, Ex. 2 ("VC").  The Government moved for a week extension to

respond to Ponte's motion and for 60 days to consider *Jarkesy*.  The week extension was granted, but 60 days was denied by the ALJ on July 19, 2024.  VC, Ex. 3.  On July 24, 2024, the FDIC forwent civil monetary penalties but proceeded on all other claims against Ponte.  VC, Ex. 4.  On August 8, 2024 (unsealed on August 16, 2024), the ALJ denied in part and granted in part Ponte's motion for summary disposition. Order No. 41.  Ponte filed this action less than a week later.  The Board of the FDIC, by Order of August 15, 2024, determined that many important factual findings in its case against Ponte, including scienter, will be made without a jury.  Decision and Order of the Board On Interlocutory Review dated August 15, 2024 ("FDIC Decision") (attached as Exhibit 1 to the TRO Reply).

Ponte brought this suit only after a landmark Supreme Court decision was presented to an administrative body and rejected. That body ruled that facts would be found by an ALJ when the Supreme Court requires them to be found by a jury.  No case cited by the Government exhibits this fact pattern and the cases are distinguishable for this and other reasons.

The standard for issue preclusion borne by the Defendants is that 1) the same issue raised in the second case must have been raised, contested and submitted for determination in the prior case; 2) the issue must have been necessarily determined by a court with jurisdiction in that prior case; and 3) "preclusion in the second case must not work a basic unfairness to the party bound by the first determination." *Martin v. Dep't of Justice*, 488 F.3d 446, 454 (D.C. Cir. 2007) (cited by *Campaign Legal Center v. FEC,* No. 22-cv-3319, 2023 WL 6276634 *7 (D.D.C. Sept. 26, 2023) ("*CLC*")).  *See also Canonsburg Gen. Hosp. v. Burwell*, 807 F.3d 295, 306 (D.C. Cir. 2015) (quoting *Apotex, Inc. v. FDA*, 393 F.3d 210, 219 (D.C. Cir. 2004) (emphasis added) ("*issue preclusion is inappropriate if there has been an intervening 'change in controlling legal principles.'*") *and* (courts "have recognized that issue preclusion would be unfair 'if the party to

be bound lacked an incentive to litigate in the first trial, especially in comparison to the stakes of the second trial.'" *Id.* (quoting *Otherson v. Dep't of Justice*, 711 F.2d 267, 273 (D.C. Cir. 1983)); *CLC*, 2023 WL 6276634 at *7 (a "curable defect" exception to preclusive effect "permits an action to proceed if the jurisdictional ground for dismissal of the original suit has been remedied by occurrences arising after the dismissal of the first action." (citing *Newdow v. Bush*, 355 F. Supp.2d 265, 274–75 (D.D.C. 2005).

Critically to this case, "[i]n considering the fairness prong, courts are reluctant to apply issue preclusion "when there has been [1] an intervening change in controlling legal principles, [2] when a party to be bound lacked incentive to litigate in the first trial, especially in comparison to the stakes of the second trial, and [3] when the prior proceedings were seriously defective." *CLC*, 2023 WL 6276634 at *8 (quoting *UMC Dev., LLC v. District of Columbia*, 401 F. Supp.3d 140, 157 (D.D.C. 2019)). The D.C. Circuit has singled out changes in constitutional law as a key reason not to apply estoppel. It stated:

> Apotex also argues that *res judicata* does not apply here, because Judge Roberts' decision in *Paroxetine* effected a significant change in circumstances after *TorPharm* had issued. *Res judicata* does not bar parties from bringing claims based on material facts that were not in existence when they brought the original suit. *Drake,* 291 F.3d at 66. And, in a small set of cases, a change in controlling legal principles may allow a party to relitigate a claim that would otherwise be barred by *res judicata. See Hardison v. Alexander,* 655 F.2d 1281, 1288–89 (D.C. Cir.1981) (stating that in general *res judicata* applies even if there has been a subsequent change in the law of the circuit, ***but noting that there are exceptions for reasons of compelling public policy, such as cases involving important questions of constitutional law).***

*Apotex*, 393 F.3d at 218 (emphasis added). The *Jarkesy* decision is such a major change.

In *CLC*, while the issue of whether there was informational harm to one party was precluded, the issues of associational standing and the statute of limitations were still open. There, the intervening event was not a Supreme Court case, and, in any event, the controlling decision came out when plaintiff could still have appealed. In that case, decided less than a year ago, the

court noted that the issue of whether there was a change of the law was "murky."  2023 WL 6276634 at *9.  Here it is not murky.  The Supreme Court has described the necessary shift as "a judicial declaration intervening between the two proceedings [that] so change[s] the legal *atmosphere* as to render the rule of collateral estoppel inapplicable." *Id.* (quoting *Comm'r of Internal Revenue v. Sunnen*, 333 U.S. 591, 600 (1948)) (emphasis in *CLC*).  *Jarkesy* changed the atmosphere on the propriety of ALJ fact finding, when large sums were being extracted from a defendant, thoroughly and irrevocably.  The Supreme Court has also said the intervening shift should be a change in "applicable legal *context*" or a "significant change in controlling…legal *principles.*" *CLC*, 2023 WL 6276634 at *9 (cleaned up) (*comparing Herrera v. Wyoming*, 587 U.S. 329, 343 (2019) *with Montana v. United States*, 440 U.S. 147, 157 (1979)).  *Herrera* cited *Limbach v. Hooven & Allison Co.*, 466 U.S. 353, 363 (1984), which refused to hold a party bound by "an early decision based upon a now repudiated legal doctrine[.]" 587 U.S. at 343.  Here, Ponte cannot be bound by prior doctrine repudiated in *Jarkesy*.

*Jarkesy* is at least as big a departure from prior law (*Atlas Roofing Co. v. OSHA*, 430 U.S. 442 (1977)) as *Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172 (1999) was from *Ward v. Race Horse*, 163 U.S. 504 (1896). There, the Court ruled *Ward* did not warrant issue preclusion in *Herrera*.  587 U.S. at 342.  Here, while Chief Justice Roberts noted in *Jarkesy* that the majority was not overruling *Atlas Roofing*,[1] it had been the habit, blessed by courts for decades,

---

[1] This is in keeping with Chief Justice Robert's penchant, often noticed by academia, of substantially weakening or overruling cases without explicitly saying so. *See* John. O. McGinnis & Mike Rappaport, *Emancipating the Constitution from Non-Originalist Precedent,* Law & Liberty (July 11, 2024), https://lawliberty.org/emancipating-the-constitution-from-non-originalist-precedent/ (discussing how Chief Justice Roberts cut back on non-originalist precedent in *Jarkesy*); *see* Russell A. Miller, *The Purpose and Practice of Precedent: What the Decade Long Debate Over Stare Decisis Teaches Us About the New Roberts Court*, 51 Hastings Const. L.Q. 231, 264 (2024) ("Roberts [has] continued to pursue this 'stealth reversal' or 'overruling by erosion' approach to *stare decisis* in the years leading up to the *Dobbs* decision").

for administrative agencies to try common law claims before themselves without juries.  A sea change was effected, whether the *Jarkesy* Court explicitly states so or not.  The dissent sure thought so, stating: "Today, for the very first time, this Court holds that Congress violated the Constitution by authorizing a federal agency to adjudicate a statutory right that inheres in the Government in its sovereign capacity, also known as a public right." 144 S.Ct. at 2155 (Sotomayor, J., dissenting).  The dissent went on to say that the key holding of *Jarkesy* was that "the nature of the remedy is … virtually dispositive" of whether a jury had to be convened.  *Id.*

"The change-in-law exception recognizes that applying issue preclusion in changed circumstances may not 'advance the equitable administration of the law.'"  *Herrera*, 587 U.S. at 343 (quoting *Bobby v. Bies*, 556 U.S. 825, 836–37 (2009)).  It would not advance the "equitable administration of law" to bar Ponte's claims here. Indeed, it would be unjust to preclude Ponte from bringing this case when the legal landscape has changed so markedly after his time to appeal his previous cases had run.

The legal landscape has changed in another way.  *Jarkesy* is a direct repudiation of Congress's ability *under the Constitution* to deny constitutional rights by jurisdictional prestidigitation.  The Court boldly stated that unless a public right is at issue, "Congress may not avoid a jury trial by preventing the case from being heard before an Article III tribunal." 144 S.Ct. at 2133.  This case, unlike any previous case, claims that after *Jarkesy*, Section 1818(i)(1) does not preclude the Court from enforcing the constitutional requirement of a jury trial. And if Section 1818(i)(1) does purport to do that, such action is itself unconstitutional, as Congress was divested of that power by the Seventh Amendment.  It would be patently unjust to preclude Ponte from making these claims after a sea change in the governing law.

The facts have also changed in substantial ways.  In contrast to when Ponte elected not to pursue appeals of prior decisions to the First Circuit, the FDIC says it now seeks vastly greater penalties and punishments than it did when it filed its original Notice of Charges on or about February 10, 2023.  *Compare* TRO Exh. A (notice of intent) *with* TRO Opp. p. 1 & n. 1.  The FDIC also now argues that Ponte somehow "defrauded" the United States Small Business Administration ("SBA"), over which it has no jurisdiction, but makes no similar claim in the charging document.[2]  *See* TRO Exh. 1 at ¶¶ 84–88. These enhancements to the FDIC's claims provide Ponte greater incentives to pursue his rights than existed in his prior cases.

This Court and the D.C. Circuit have recognized exceptions to estoppel in cases with less changes in facts and law than here, where whether Congress intended to remove the jury right from individuals and whether it is constitutional for them to do so is a pure question of law.  *See, e.g.*, *Alabama v. U.S. Army Corps of Eng'rs*, 704 F. Supp.3d 20, 69 (D.D.C. 2023) (water law): *see also Pinkney v. Dep't of Justice*, No. 06-0246, 2007 WL 2059129, at *2 (D.D.C. July 18, 2007) (denying 12(b)(1) *res judicata* dismissal because of changed circumstances) (but granting collateral estoppel).

In this case there is not only intervening law,[3] but the ALJ has now ruled that that intervening law from the Supreme Court does not apply to her because a statute does not give her the ability to summon a jury.  The FDIC has ruled that issues of fact, including scienter in what

---

[2] Admittedly, the Notice of Charges alleges that Ponte violated the SBA Standard Operating Procedures ("SOP"), which is guidance and neither regulation nor statute.  (It is axiomatic that it is up to the SBA's PLP Lender to interpret the SOP. Neither Ponte nor his company had the ability to do so.)  In doing so, the FDIC asserts that it is the regulated financial institution, *to wit*, Independence Bank, that was purportedly harmed by Ponte's alleged conduct, and not the SBA.  *See, e.g.*, TRO Exh. 1 at ¶¶ 112–23.  The FDIC's late asserted position is a marked departure from its prior position.

[3] It should be noted that *Loper Bright/Relentless*, 144 S.Ct. 2244, also rejects deference to an administrative agency's view of the law and to the extent such reflexive deference to the FDIC's view of its jurisdiction infected the prior proceedings, they are not to be relied upon for preclusion.

amounts to a common law fraud case, will be found by the ALJ sitting without jury. Exh. 1, TRO Reply, (FDIC Decision).  The FDIC has purported to drop civil monetary penalties but reinstated them, in greater amounts, by another name.  The facts and law have dramatically changed and so there ought to be no preclusion.

The D.C. Circuit has been loath to extend estoppel principles to "different issues" no matter how similar.  *See Jackson v. Off. of the Mayor of D.C.*, 911 F.3d 1167, 1171 (D.C. Cir. 2018) (similar claims in state and federal court are not the same).  *National Association of Home Builders v. EPA*, 786 F.3d 34, 43 (D.C. Cir. 2015), relied upon by the Government, is not to the contrary. There, the court indicated that had the plaintiff "alleged that events after the original dismissal" cured the jurisdictional defect found by the previous court, it would not apply estoppel.  *Id.*  But here that is precisely what Ponte alleges.  There have been two intervening Supreme Court cases and rulings by the FDIC that one, *Jarkesy*, will not be followed.  *Jarkesy* stands for the proposition that Congress *cannot strip jury rights from an individual for the equivalent of common law claims*. *Loper Bright/Relentless* held that this Court is not to defer to the FDIC.  The combination of *Axon/Cochran* and *Jarkesy* set up a brand-new question of jurisdiction: the question is not only what did Congress do in Section 1818(i)(1) but also *whether it was constitutional to strip jury rights from Ponte even if that is what Congress intended.*

While Counts III and IV of the Complaint are either wholly new or completely changed because of intervening facts and changes of law and *res judicata* cannot apply to them, the same result should also apply to Counts I and II.  The facts occurring because of the rulings of Defendant Whang, as well as the increased penalties now being sought by the FDIC completely change the nature of the action against Mr. Ponte from those in *Ponte II*.  *Jolley v. United States*, No. 21-5181, 2024 WL 1521633, at *3 (D.C. Cir. Apr. 9, 2024), is also instructive. There the D.C. Circuit had

11

held action in that case pending *Axon/Cochran*.  It then readdressed the issue considering the new precedent.  *Jolley* is new intervening precedent on *Axon/Cochran* in this Circuit and its intervening teachings change the *res judicata* effect, if any, of *Ponte I* and *II*.  *Jolley* is addressed further below.

**B.      12 U.S.C. § 1818(i)(l) Does Not Strip Jurisdiction from this Court**

It is instructive what the Government cannot deny or argue regarding Ponte's right to a jury trial and statute that it claims strips this Court of jurisdiction.  First, the statute does not *require* restitution to injured persons for any of the claims made against Mr. Ponte.  This places the matter on all fours with *Jarkesy* and the voluntary asserted actions of the FDIC do nothing to change it. The Government did not address the fact that the FDIC, in "waiving" its civil money penalties ("CMPs"), maintains the legal basis seek them later.  *See* VC Exh. 4.  It also does not deny that there is no identified *res* the FDIC is trying to obtain from Ponte.  It is moving on overcharges on contracts and on material misstatements, by commission or omission, which all sound in fraud. While the Government attempts to claim that promising to give any recovery to somebody beside itself changes the nature of the claim, the facts of the matter are not denied.  Finally, the Government does not argue that Congress possesses plenary power to strip courts of jurisdiction.

The legal analysis the Government does offer is flawed.  For example, the Government states that *Burgess v. FDIC*, 639 F. Supp.3d 732, 742–50 (N.D. Tex. 2022), *appeal docketed*, No. 22-11172 (5th Cir. Dec. 5, 2022), was wrongly decided.  However, the cases the Government cites as rejecting *Burgess* are all pre-*Jarkesy* and some are from courts with binding precedent on the matter.  *See Bonan v. FDIC*, No. 4:23-cv-8, 2023 WL 156852 at *4 (E.D. Mo. Jan. 11, 2023) (rejecting *Burgess*' reliance on the Fifth Circuit's now affirmed ruling in *Jarkesy* as non-binding). *Bonan,* like *Ponte I*, is clearly wrong as it rejects the 5th Circuit's reasoning on jury trials that has now been upheld by the Supreme Court and thus is binding here.

The Government also chiefly relies on *McBryde v. Committee to Review Circuit Council Conduct*, 264 F.3d 52 (D.C. Cir. 2001), *affirming in part and vacating in part*, 83 F. Supp.2d 135 (D.D.C. 1999), and yet that case, if anything, stands for the proposition that individual rights like the right to a jury are cognizable in the district courts despite congressional attempts to bypass jurisdiction.  In that case, the district court explicitly ruled that the denial by the statute and by the defendant of plaintiff's First Amendment rights through prior restraint was unconstitutional and ruled for the plaintiff.  83 F. Supp.2d at 178.  The Government did not appeal that ruling.  The D.C. Circuit, accordingly, left this ruling completely undisturbed despite claims of congressional stripping of jurisdiction.  264 F.3d at 68.  The Seventh Amendment right to jury trial, like the First Amendment right to speech, is an individual exogenous right that the district court decided it had jurisdiction over and that ruling from this district is precedent.  And it is precedent that favors Ponte's claims on his jury rights.  The Government also used *McBryde* for another proposition critical to Ponte here:  importantly, if "'[j]udicial review of [his] structural constitutional claims [comes] too late to be meaningful[,]'" *i.e.*, after the administrative proceeding has been completed, then the case is moot.  *Jolley v. United States*, No. 21-5181, 2024 WL 1521633, at *3 (D.C. Cir. Apr. 9, 2024) (quoting *McBryde*, 264 F.3d at 55) (alteration in original).  It is therefore critical that the administrative proceeding here be stayed, pending a determination of the constitutional questions.  It would be unconscionable if Ponte's rights to a jury trial and basic due process already laid out by the Supreme Court were mooted by a failure of stay.  What happened to the plaintiff in *Jolley* ought not to be a goal but a warning.

*Board of Governors of Federal Reserve System v. MCorp Financial Incorporated,* 502 U.S. 32 (1991), relied upon by Defendants, is nearly irrelevant to the case here.  There was no constitutional claim in that case at all.  It was a pure question of whether the automatic stay

provisions of the bankruptcy code reached the administrative hearings by the FDIC of a regulated and FDIC-insured bank. *Id.* at 37 (case concerned an "interpretation of the relationship between the provisions governing judicial review of Board proceeding and those governing bankruptcy proceedings."). Whether Congress intended to remove any constitutional rights, never mind jury rights, from an individual under Section 1818(i)(1) was completely unaddressed. It is also long before the revolution in jurisdiction and constitutional rights wrought by cases such as *Axon/Cochran* and *Jarkesy*. Even in *MCorp*, however, the Court left open the possibility that claims that could not be vindicated post-appeal might be stayed in the proper case. That case turned on the fact that *MCorp* had a perfectly fine remedy in the appellate courts for its challenge to the "source of strength regulation" it challenged. *Id.* at 43–44. But what Ponte is being denied is completely irremediable.

Just as *MCorp* did not determine whether Congress intended to strip individuals of jury rights, but only whether it intended to strip statutory claims from the district courts, the other D.C. cases the FDIC relies upon have the same problem. In *Riddler v. Office of Thrift Supervision*, 146 F.3d 1035, 1041 (D.C. Cir. 1982), the court explicitly held that there was no constitutional violation because there was no taking.[4] It also noted the type of cases that fall under *Leedom v. Kyne*, 358 U.S. 184 (1958), jurisdiction in the district courts. *Id.* at 1040 ("Under *Kyne,* they argue, district courts may review agency action, even when Congress intended otherwise, if a plaintiff makes a 'strong and clear' showing that the agency has acted contrary to its statutory authority or deprived the plaintiff of constitutional rights") (citing *McCulloch v. Libbey–Owens–Ford Glass Co.,* 403 F.2d 916, 917 (D.C. Cir. 1968)). Only because there was not a showing of a clear

---

[4] Ironically there, the plaintiff *wanted* to be an IAP. Here, Ponte, unlike every entity in the cases cited by the FDIC, was not a bank, the employee or the affiliate of a bank. He took no affirmative action to become a regulated party. And yet, he has been deemed a regulated party by the FDIC simply because he did business with a bank.

constitutional violation was no jurisdiction found.  Here Ponte's jury rights and due process rights are being willfully ignored as all the orders of the ALJ and the FDIC demonstrate. *First National Bank of Scotia v. United States*, 530 F. Supp. 162, 169 (D.D.C. 1982), is of the same nature.  There were no constitutional rights at issue, and its statements about the availability of appellate review of agency action being sufficient to divest a district court of jurisdiction are clearly contrary to *Axon/Cochran*. The recent *Jarkesy* opinion and the constitutional jury trial right at issue here undermine the cases cited by the Government in support of its claim that 12 U.S.C. § 1818(i)(l) divests this Court of its normal federal question jurisdiction.[5]

### C.     *Axon/Cochran* Applies Here and Not Only to "Implicit" Jurisdictional Bars

The FDIC makes two arguments concerning *Axon/Cochran* and its application to this case, neither of which is correct.  First, it attempts to steal a base by asserting that Section 1818(i)(1) is an "explicit" bar to district court jurisdiction under 28 U.S.C. § 1331.   Second, it claims that *Axon/Cochran* only applies to questions of "implicit" jurisdiction stripping.  Both assertions are wrong.

First, the analysis in *Burgess* of whether Section 1818(i)(1) *is* an explicit bar to the claims here is a matter of first impression in this Circuit.[6]  *Burgess* was relying for its analysis on the Fifth Circuit's decision in *Cochran* which has now been affirmed by the Supreme Court.  *Burgess*' holding is that when a jurisdictional limitation does not reference other jurisdictional statutes and the question is whether it bars constitutional rights explicitly from a district court, the failure to mention affected jurisdictional statutes weighs against finding an "explicit" bar.  639 F. Supp.3d

---

[5] This is particularly so as to Anti-Injunction Act cases.  The Anti-Injunction Act and statutes like it are aimed at delay in taxation and only divest jurisdiction from the court if the taxpayer fails to pay the tax. *See CIC Srvs., LLC v. IRS*, 593 U.S. 209, 211 (2021).  Such cases are inapposite.

[6] Justice Gorsuch's concurring opinion in *Axon/Cochran* is dealt with below, but the Court's opinion was written by Justice Kagan, and she did not cite Section 1818(i)(1) in the majority opinion.

at 742 (citing *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 10 (2000), (addressing a jurisdictional bar explicitly excluding Section 1331)).  Here, we have a key constitutional right, and as *Burgess* noted, citing *Webster v. Doe*, 486 U.S. 592, 603 (1988), when Congress intends to remove jurisdiction from the district courts in those circumstances it must be clear.  *Id.*  The FDIC tries to distinguish *Webster* to only apply to complete denials of judicial review.  Opp. at 21.  But that is unavailing.  Not only does *Webster* not state that in its ruling, but in this case the trial of Ponte without a jury and the ALJ finding facts without such a jury are completely uncorrectable after they happen.  *Burgess* is absolutely right that Congress did not make its intent clear as *Shalala* demonstrates it could have, so the Court must engage in further statutory interpretation to discern Congress' meaning.

But even on its own terms, *Axon/Cochran* is not limited to "implicit" jurisdiction stripping.  While the question presented in that case was as to "implicit" jurisdiction stripping, the case heavily relied on *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 208, 212 (1994), which found that even when a statutory scheme clearly stripped jurisdiction in some instances, the Court's duty was to determine whether the claims asserted were the "type Congress intended to be reviewed within this statutory structure" *Axon/Cochran*, 598 U.S. at 186 (citing *Thunder Basin*, 510 U.S. at 208, 212).  In such cases the court examines whether there is meaningful review.  Here there is not.  If Ponte is denied a jury trial on the claims against him all sounding in contract and fraud, he will have suffered a constitutional injury as well as likely reputational injury that cannot be fixed on appeal.  If the ALJ finds for him and the FDIC affirms, he will not be able to appeal.  He will have been subjected to an unconstitutional proceeding, denied his constitutional rights, and yet have no remedy or meaningful review.  Like in *Axon/Cochran*, if the ALJ proceeds, Ponte's claim "is about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker

[factfinder].  And as to that grievance, the court of appeals can do nothing: A proceeding that has already happened cannot be undone. Judicial review of [Ponte's] structural constitutional claims would come too late to be meaningful." 598 U.S. at 191.

The FDIC leans heavily on Justice Gorsuch's concurrence in *Axon/Cochran* to claim the jurisdiction stripping here was "explicit" even as to a jury right.  That's far too much weight to put on a concurring opinion that uses a "*See e.g.*" cite and does not grapple with the question of constitutional rights.  *Axon/Cochran*, 598 U.S. at 207 (Gorsuch, J., concurring).  The concurring opinion, in which Justice Gorsuch vents his well-known penchant for eschewing multi-factor tests, is not a reasoned determination on the meaning of a statute that was used as an example.  More useful to this Court is that concurrence's dire, well-reasoned and well-supported explanation of what happens when district courts do not assert proper jurisdiction early enough to prevent unconstitutional proceedings.  *Id.* at 215–16 (dire injury and lack of remedy for petitioners from failure to exercise jurisdiction in the first instance).  The concurrence that is more meaningful to this Court's substantive analysis is that of Justice Thomas, which presaged *Jarkesy*.  *Id.* at 196–204 (Thomas, J., concurring) (Adjudication of "private rights" requires Article III courts as a constitutional matter).

Justice Gorsuch's view of jurisdiction in *Axon/Cochran* is important, however.  As Justice Gorsuch noted, § 1331 provides a "direct" route for judicial review that avoids the "sheer incoherence" of *Thunder Basin*'s "judge-made, multi-factor balancing test[.]" *Axon/Cochran*, 598 U.S. at 205 (Gorsuch, J., concurring). As Justice Gorsuch articulated, the *Thunder Basin* framework causes courts to "engage in this business of jurisdiction-stripping-by-implication" when "[u]nder our Constitution, 'Congress, and not the Judiciary, defines the scope of federal jurisdiction.'" *Id.* at 207 (Gorsuch, J., concurring) (quoting *New Orleans Pub. Serv., Inc. v. Council*

17

*of City of New Orleans*, 491 U.S. 350, 359 (1989)). As he noted, "*Thunder Basin* … defies these foundational rules" and "[a]long the way" caused courts to "arrogate[]" power to control federal court jurisdiction "that the Constitution reserves to Congress." *Id.* at 208 (Gorsuch, J., concurring) . While Ponte recognizes that this Court is bound by *Thunder Basin*, courts can act consistent with precedent while also recognizing that a challenged precedent may be incompatible with the Constitution. *Cf. Am. Inst. for Int'l Steel, Inc. v. United States*, 376 F.Supp.3d 1335, 1345 (Ct. Int'l Trade 2019) (Katzmann, J., dubitante) (collecting dubitante opinions).

*Bohon v. FERC*, 92 F.4th 1121 (2024), again does not change the analysis. In that case the plaintiffs had a full and fair opportunity to challenge the granting of a permit, did not do so, and then attempted to do so in district court after the circuit court already had jurisdiction. Further, there was no constitutional challenge mentioned in that case or suggestion that the statute did not provide meaningful review of any constitutional claim. Thus, *Bohon* completely fails to address the questions here: whether there is meaningful review and whether, even if Congress was clear enough in its intent to deprive Ponte of his right to a jury trial, it had the constitutional power to do so.

The Defendants also cite *Bank of Louisiana v. FDIC*, 919 F.3d 916 (5th Cir. 2019), but that case did not reach the separation of powers constitutional claims made here.[7] *Id.* at 930. The court explicitly stated that the only claims made by the petitioner there were for "equal protection" for age discrimination and "due process" for preventing certain evidence and speaking with his counsel. *Id.* at 921. Those claims were "inextricably intertwined" with the proceeding and in addition meaningful review was available. *Id.* at 928–29. The claims here were not even addressed in *Bank of Louisiana* and are of a wholly different character. No appellate court can fix Mr. Ponte's

---

[7] It is also telling that the court on those claims was applying implicit preclusion analysis as Plaintiff urges here. *Bank of La.*, 919 F.3d at 923.

being subject to a prejudicial juryless fact-finding by unconstitutionally created officers and board. The separation of powers issues here were not briefed or addressed or explained in *Bank of Louisiana* and even if persuasive on the claims made there, it is not for those made here.

Finally, all the counts here allege Mr. Ponte will be subject to an unconstitutional tribunal. As noted, if held liable he will suffer an injury before the public, his community and profession that cannot be cured on appeal whether reversed or not. If Ponte is vindicated on the merits, he is unable to appeal the constitutional injury of proceeding before an improper tribunal. It is true that Ponte is not an IAP. This case is as if someone who wrongfully overdrew his bank account had the FDIC assert IAP jurisdiction over him to deny him his jury rights. It is also true that the suit challenges the structure of the agency. But given the context of his allegations and the clear fact that there is no meaningful review for Mr. Ponte, the *Axon/Cochran* factors and even *Thunder Basin* factors redound to his benefit.

### D.    If Congress Intended to Subject Ponte to a Fact Finding Without Jury on These Claims, Section 1818(i)(1) Is Unconstitutional

The FDIC does not directly address whether Congress has plenary power to intentionally deny Ponte his jury rights or, if as *Jarkesy* suggests, it is unconstitutional and beyond Congress's power under Article II. Instead, the Government seems to assert that Congress has the power as long as a circuit court can reverse the FDIC some day and … do what? The FDIC can't provide him with a jury trial by its own admission. Ponte will have been—in direct contradiction of the Seventh Amendment and of *Jarkesy*—deprived of a jury trial for all facts at issue. If he loses, he will have that fact finding against him and the ordeal of "trial" that can not be undone. If he somehow prevails in FDIC's own tribunal, he still has been deprived of his jury trial and due process rights and has no right to appeal. The Government says that 12 U.S.C. § 1818(h)(2) cures all constitutional problems by making a circuit court available after all the constitutional violations

without remedy are inflicted.  Opp. at 22, Section II, A, 2 (c) (citing 12 U.S.C. § 1818). All of the cases the Government cites, however, raise issues that can be remedied later.  It cites cases that are inapposite to what is happening here.  For example, in *Ramallo v. Reno*, 114 F.3d 1210, 1214 (D.C. Cir. 1997), the court noted that the alien in that case had habeas review to address any constitutional problem *before he was removed*.  In this case the irreparable harm will be done before any court can correct or repair the agency's unconstitutional action.  And the FDIC's citation of *Blitz v. Donovan*, 740 F.2d 1241, 1248 (D.C. Cir. 1984), comports with Ponte's argument that Section 1818(i)(1) should be interpreted so as not to raise a constitutional question. Moreover, *Blitz* is a simple exhaustion of administrative remedies case having nothing to do with constitutional claims.

The FDIC cites *Lockerty v. Phillips*, 319 U.S. 182, 187 (1943), for the proposition that Congress can make district courts and so can deny them any jurisdiction it likes.  This is wrong on several fronts.  First, *Lockerty* is about price controls in war time.  Second, the litigants there did not take advantage of any remedies allowed them under the statute.  *Id.* at 186. Third, Congress created a court in equity to deal with claims.  The entire case is about equity jurisdiction.  *Id.* at 187–88.  Here, these are all actions at law and require an Article III court and a jury under the Constitution.  Neither the *Lockerty* court nor any subsequent court has said that Article II gives the Congress power to prevent protection of individuals from Congressional violations of core individual rights by denying them access to courts.  In short, Section 1818(i)(1) does not divest this Court of jurisdiction over the claims here but if it did it would be beyond Congress's power to do so.

### III.  PONTE'S CLAIM ON COUNT III STATES A CLAIM AND HE IS ENTITLED TO A JURY TRIAL FOR THE VAST CIVIL DAMAGES DEFENDANTS SEEK

The FDIC claims that it can transform clear legal actions into either "equity claims" or

"public rights" by pronouncement. *Jarkesy*, however, stands for the proposition that Congress itself cannot make claims "equitable" or a "public right" merely by calling them such. *Jarkesy*, 144 S.Ct. at 2136 ("if the action resembles a traditional legal claim, its statutory origins are not dispositive.").[8]

### A. FDIC's Claims Sound in Law, Not Equity

The FDIC's arguments are practically nonsensical after *Jarkesy* and its own Notice of what it is charging. TRO Exh. A ("Notice"). *See* Opp. at 24–29. In his TRO motion, Ponte laid out the actual allegations in the Notice and their names: Fraud and overcharging on contracts. *See* TRO Mem. at 12. The Court can look at the charges itself: they are not a mystery. First, the Notice begins by noting Ponte's company entered contracts with the Bank for referrals. Notice ¶¶ 12–14. If those contracts were not followed or were otherwise unlawful, that is a contract action of some kind. Next, Ponte is accused of entering more contracts, called "bridge loans," through another company. *Id*. ¶¶ 37–39. This allegation also seems to include allegations of usury, *id.* ¶ 40, and material omissions, *id.* ¶ 42.[9] The FDIC calls the transfer of risk "fraudulent." *Id*. ¶ 61. It also claims they are violations of regulations, but the FDIC cannot magically claim a fraud is not a fraud by making a regulation about it. That is the teaching of *Jarkesy*: Congress cannot transform common law claims into statutory ones. 144 S.Ct. at 2136. (citing *Granfinanciera*, *S.A. v. Nordberg*, 492 U.S. 33, 56 (1989) and *Stern v. Marshall*, 564 U.S. 462, 484 (2011)). The Notice

---

[8] Congress does not have equitable powers. It cannot provide the agencies with powers neither it nor the executive have. The power to adjudicate equitable remedies are powers of a court. Whether in law or equity, an Article III court must adjudicate them. So, though a court may try equitable matters without a jury, an agency cannot.

[9] The FDIC says deceiving the SBA is not a common law claim; but if a contract was made or an omission made, it is either a contract or a fraud with the SBA as an interested party. And here, the FDIC is claiming the people injured were the people in contract with Ponte's companies (not Ponte). They are beneficiaries of contract, and any "restitution" is through contract otherwise they have no relationship with Ponte.

at ¶¶ 70–74 sounds in guaranty actions.  Further, it claims a "[F]raud on the SBA."  Notice ¶¶ 84–110.  The Notice proceeds with more alleged fraudulent activity regarding altering documents and the "Genesis of the *Fraudulent* Bridge Loan Scheme." *Id.* ¶¶ 112–338 (emphasis added).  Specific loans and actions regarding them are identified.  Ponte did not choose any of this language or the allegations.  The FDIC did.  If his companies charged too much in interest, that is a contract or usury claim.

The Court should also look at the FDIC's behavior and its actions before and after *Jarkesy* to assess the proper state of the allegations.  The Notice lays out a scheme and asks for penalties that it reduces to $74,000 for Ponte.  *Id.* ¶ 46.  As he opposes them, the FDIC ups the number.  Then, *Jarkesy* is issued, and the FDIC claims this is all not punishment, but "equity."  As noted, the FDIC has no equitable powers. It is not an Article III court and under *Jarkesy* can't have such powers.  Thus, cases like *Crude Co. v. FERC*, 923 F. Supp. 222 (D.D.C. 1996), are inapplicable.  That case had a trial in an Article III court.  *Id.* at 227.  But as to the jury right, the FDIC is doing exactly what the Supreme Court prevented Congress from doing: characterizing a normal common law allegation as a violation of statute or "equity" to deny the accused his rights.  *See* VC Exh. 1 at 1–2 ("restitution is an equitable claim.")

The FDIC says it does not allege that "Ponte's improper fees overcharged or otherwise breached any contract."  Opp. at 28 n.20.  But every contract is presumed to have the background of applicable law.  *See generally*, *Cheek v. United States*, 498 U.S. 192, 199 (1991) ("common law presumed that every person knew the law.").  Here, the claim is that Ponte's charges were unlawful under the law (as enforced by the FDIC), and that is why those in contracts with Ponte are supposedly to be reimbursed.  Of course, the statement that there would be reimbursement to alleged victims was only extracted from the FDIC in the wake of *Jarkesy*, which is another reason

to discount the assertion that these are all regulatory violations or "equitable" remedies. The Supreme Court has also held agencies—even in Article III court proceedings—to adhere to all elements of the equitable power asserted. *See generally*, *Liu v. SEC*, 591 U.S. 71, 91–92 (2020) (holding even when Congress grants statutory equitable remedies they must adhere to traditional equitable principles); *Grupo Mexicano de Desarrollo S.A., v. Alliance Bond Fund*, 527 U.S. 308, 319 (1999) (traditional procedural rule required "that remedies at law had to be exhausted before equitable remedies could be pursued.").

The FDIC's arguments are foreclosed by *Kokesh v. SEC*, 581 U.S. 455, 466–67 (2017). The FDIC statute does not require that "restitution" go to the injured individuals. Nor does the FDIC make any provision for deducting expenses exactly as the Court in *Kokesh* stated was an effort to penalize. Further, the FDIC's whole argument that simply ceasing the proceeding will injure faith in the banking system demonstrates that the remedies sought are for the purpose of punishment and deterrence. Just as in *Kokesh*, an agency can't call something "equity" if it has an element of punishment and here it does. The FDIC's withdrawal of CMPs provides powerful evidence that, in the FDIC's view, restitution here serves the same purpose as penalties.

The FDIC waived its remedies at-law to avoid a jury, and equity should not step in. The FDIC also obscures the matter by bringing the SBA into the allegations.[10] The SBA's losses do not seem ascribable to Ponte in any event. Is the "restitution" for overcharging on contracts? If so, what has the SBA got to do with restitution? The FDIC attempts to escape *Great-West Life & Annuity Insurance Company v. Knudsen*, 534 U.S. 204, 210 (2002), but it cannot: overpayments on a contract are a contract damage. If the party to the contract receives the overpayment in law,

---

[10] The whole exercise is difficult to square with equitable principles as the Bank was responsible for providing all this information to regulators, not Ponte. But in any event, the theory gets murkier as the FDIC weaves to walk away from its original pleading of garden variety fraud.

it does not lie in equity.  *See Dist. Title v. Warren*, No. 14-1808, 2015 WL 7180200 at *6–7 (D.D.C. Nov. 13, 2015) (recovering on breach of contract means a party cannot obtain unjust enrichment from the contracting party).  Here, the FDIC purports to stand in the shoes of contractors who it has waived remedies at law for and cannot then deem the same thing "equitable recovery."

### B.  No Public Right Is Implicated

Nor does any "public right" exist here to invalidate Ponte's jury claim.  According to the FDIC's Notice, Ponte's businesses contracted with those it referred to the bank before they ever had an SBA loan.  Notice ¶¶ 37–43.  According to the allegations, Ponte's companies made contracts with individuals or companies and provided Bridge Loans *whether or not* the SBA later funded them.  This was all private market contracting by Ponte's companies.  Despite this, the FDIC cites public rights cases having nothing to do with contracts with loan seekers or banks.  For example, tariffs are a government function it alone conducts.  *Murray v. Hoboken Land & Imp. Co.*, 59 U.S. 272, 284 (1856) ("*Murray's Lessee*").  The same is true of immigration enforcement, patent rights, public lands issues, and tribal relations.  *See* Opp. at 31 (collecting cases).[11]  Banking is not such an activity nor do the cases cited by the Government declare it to be.  There are private banks, and they are regulated.  That does not mean that the contracts of everyone who then contracts with a bank becomes a public right.  Otherwise the lessons of both *Murray's Lessee* and *Stern v. Marshall*, 564 U.S. 462, 488–489 (2011), that private rights cannot be removed from Article III courts because they touch on something the Government is doing, would be lost.

In *Stern v. Marshall* it was bankruptcy courts.  In *Murray's Lessee*, the Government was concerned with arguably its own property.  That is not the case here.  When the Government enters into and affects the private market, it does not create a "public right" that eliminates private rights.

---

[11]  In fact, the FDIC's entire argument on "public rights" reads like the dissent in *Jarkesy*. Opp. at 1–22.  Obviously, as it is a dissent it is not law and should be rejected here as it was there.

It is this distinction that the Supreme Court has had to maintain against arguments like that presented here for more than a century and a half.  As Justice Thomas explained, public rights and privileges belong to the "people at large." *Axon/Cochran*, 598 U.S. at 199 (Thomas, J., concurring) (quoting *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 344 n.2 (2015) (Thomas, J., concurring)) (internal quotation marks omitted).   Neither the contracts Ponte's corporations entered into with potential borrowers, nor the contracts they had with the Bank created public rights; rather, they were individual rights of the parties involved.  These are not going to the treasury, like tariffs, which again belies any assertion of a "public right."  This case is nothing like the cases identified in *Axon/Cochran* by the majority, the dissent, or the Thomas concurrence.  To the extent *Atlas Roofing* maintains viability after *Jarkesy*, it has no application here. The FDIC is accusing Ponte of overcharging on contracts (in violation of its regulations) and making material misrepresentations to others (in violation of regulations).   But those regulations "[carry the] [common law] soil:" indeed the very language of the common law with them and no public right is implicated.  *Jarkesy*, 144 S.Ct. at 2130 (quoting *United States v. Hansen*, 599 U.S. 762, 779 (2023)) (internal quotation marks omitted).

The arguments the FDIC is making on public rights were completely rejected in *Jarkesy.* But the FDIC also claims that banks have been federally regulated for a long time, and this somehow makes banking cases a public right.  The securities laws are of a piece.  Congress created the Securities and Exchange Commission in 1934 through the Securities Exchange Act (a year after the FDIC was established).  15 U.S.C. § 78d(a) (1934). Securities trading has been regulated at the state level since 1792, when New York passed its first significant securities legislation.  Stuart Banner, *What Causes New Securities Regulation? 300 Years of Evidence*, 75 Wash. U. L.Q.

849, 849–50 n.6 (1997) (citing N.Y. Laws, 15th Sess., ch. 62 (1792)).  None of that makes contracts with banks "public rights."

Finally, if it is true that the FDIC cannot move in federal court, that does not make its claims "public rights."  The whole teachings of *Tull v. United States*, 481 U.S. 412 (1987)*, Axon*, and *Granfinanciera* are that the Government cannot change private rights to public ones by fiat. This is equally true of failing to provide the FDIC with the right to go into district court.  That does not convert FDIC's claims to public rights.

## IV.  COUNT I STATES A CLAIM

The Government argues that the FDIC's protections from removal by the President as alleged in Count I are constitutional and that Ponte cannot prove that the structural infirmities harmed him.  It relies for the first proposition on *Meta Platforms, Inc. v. FTC*, No. 24-5054, 2024 WL 1549732 (D.C. Cir., Mar. 29, 2024) and, of course, *Humphrey's Executor v. United States*, 295 U.S. 602 (1935). For the second it relies on *Collins v. Yellin*, 594 U.S. 224 (2021).  The first problem with this argument is the standard of review.

*Meta Platforms* was decided on an injunction standard where Meta had the burden of proof. This is a motion to dismiss where all allegations and reasonable inferences are resolved in favor of the Plaintiff.  In addition, the plaintiff in *Meta Platforms* had many consent agreements with the agency and those forestalled its claims.  2024 WL 1549732 at *3.  Mr. Ponte has refused to enter into any such agreement with the unconstitutional agency and officers and so has waived nothing.

And while *Humphries Executor* remains "in place," by its terms it only applies to the FTC. The powers wielded by the FDIC and Defendants here are widely at variance with those of the FTC in 1935.  Those differences may be subject to a summary judgment motion, but this is a motion to dismiss and the allegations of the Complaint under binding precedent make out a claim

that the FDIC is unconstitutionally set up and that structure is responsible, at least in part, for Ponte's injuries.  Complaint, Count I.  The FDIC "wields significant executive power."  *Id.* ¶ 79 (citing *Seila Law*, 591 U.S. at 204).  It is not quasi-judicial and quasi-legislative.  Its multi-headed form does not protect it from constitutional infirmity under the facts alleged particularly as the FDIC admits they cannot be removed except for cause.  TRO Opp. at n.26.

As for harm, there is no necessity to allege in a Complaint that the President would remove an FDIC director, particularly as declaratory judgment is sought.  What the remedies for the alleged injury should be is an open question, as was the case in *Collins*.  But as Justice Gorsuch said there, "removal restrictions may be a greater constitutional evil than appointment defects."  594 U.S. at 277 (Gorsuch, J., concurring).  Moreover, that greater evil affects the "freedom of the individual" *Id.* at 278 (citations omitted).  In *Collins*, the Court remanded for a fact finding on the question.  It did not have to be alleged in the Complaint.  The same applies to this motion at this stage.

## V.  COUNT II STATES A CLAIM

Once again, the FDIC seems not to understand this is a motion to dismiss.  The exact nature of the ALJ's powers and position in this case has been alleged.  "Under *Lucia*, the ALJs used by the FDIC, including Whang, are 'Officers of the United States' 585 U.S. at 237."  Complaint ¶ 86.  She and they are given double for cause protection from removal.  Right now, one of these ALJ's is subjecting Ponte to an unconstitutional proceeding.

The FDIC argues that because the Board can disregard the ALJ's decision, their insulation through double for-cause removal protection presents no constitutional infirmity.  This understates the ALJ's power. Their fact finding, if undisturbed by the Board, must be accepted by courts if only "substantial evidence" supports it, and credibility determinations must be approved by unless they are "'patently insupportable.'"  *See Exxel/Atmos, Inc. v. NLRB*, 28 F.3d 1243, 1246 (D.C. Cir.

1994) (quoting *NLRB v. Creative Food Design Ltd.*, 852 F.2d 1295, 1297 (D.C. Cir. 1988)).  That certainly injures Ponte because the insulation of the ALJs from any meaningful check means that all such decision making will infect the appellate court should he ever get there.  But more to the point, the Defendants cite most cases concerning ALJ's pre-*Seila Law* and like cases.  The nature of these ALJs, their powers and their protections are for post-Complaint inquiry and are not clear on any case cited by Defendants.  The main argument for dismissal is that Ponte has not alleged the President would remove Whang if he could.  Once again, this is a factual issue and *Collins* remanded it for fact-finding, not dismissal.  The same is the case here.  If all inferences are provided to the Plaintiff, a claim has been made.  The ALJs violate separation of powers principles.  Those principles protect individual rights.  Mr. Ponte is being harmed by them right now and for the foreseeable future as those fact findings will infect an Article III court if not enjoined.  No more is needed.

## VI.  COUNT IV STATES A CLAIM

The Defendants only spend a paragraph on the Due Process claim.  They cite a half-century old case from before the applicable Supreme Court separation of powers jurisprudence began and while deference to agencies was at its height.  *See Withrow v. Larkin*, 421 U.S. 35 (1975) (cited in TRO Opp. at 40–41).  But more to the point, that case has nothing to do with due process violations of individual rights because of cumulative constitutional infirmities affecting the entire process.  This claim too must survive the lenient 12(b)(6) standard.

## CONCLUSION

The Defendants' Motion to Dismiss should be denied in all respects.

Dated: September 6, 2024

Respectfully submitted,

/s/ *John J. Vecchione*
John J. Vecchione (DC Bar #431764)
Kara Rollins (DC Bar #1046799)
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Dr., Ste. 300
Arlington, VA 22203
(202) 869-5210
John.Vecchione@NCLA.legal


*Counsel for John C. Ponte*

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing document complies with the page limitation limit under LCvR 7(e) as well as other pertinent requirements set forth in LCvR 5.1, LCvR 7, and the Federal Rules of Civil Procedure.

<u>/s/ John J. Vecchione</u>

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that foregoing document was filed on September 6, 2024 via this Court's electronic filing system. Undersigned counsel further certifies that the foregoing was served on all counsel of record via the notification of docket activity generated by this filing.

/s/ John J. Vecchione