### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOHN C. PONTE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 24-cv-2379 (APM)** |
| ) | |
| **FEDERAL DEPOSIT INSURANCE** ) | |
| **CORPORATION, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

### <u>MEMORANDUM OPINION</u>

### I.

Congress invested Defendant Federal Deposit Insurance Corporation ("FDIC") with broad authority to protect the integrity of federally insured banks and savings associations. *See generally* 12 U.S.C. § 1811 *et seq.* Pursuant to that authority, the FDIC may remove from office "any institution-affiliated party" who has engaged in misconduct and prohibit such party from further participation in the banking industry. *Id.* § 1818(e)(1), (7). The Agency is also authorized to impose civil penalties, *id.* § 1818(i)(2), and seek restitution, *id.* § 1818(b)(6), provided the statutory requirements are met.

"To prevent regulated parties from interfering with the comprehensive powers of the [FDIC], Congress severely limited the jurisdiction of courts to review ongoing administrative proceedings" initiated by the Agency. *Ridder v. Off. of Thrift Supervision*, 146 F.3d 1035, 1039 (D.C. Cir. 1998) (citation omitted); *accord Inv. Co. Inst. v. FDIC*, 728 F.2d 518, 524 (D.C. Cir. 1984). That jurisdictional bar is found in 12 U.S.C. § 1818(i)(1), which provides that, subject to certain exceptions (none of which apply here), "no court shall have jurisdiction to affect by

injunction or otherwise the issuance or enforcement of any notice or order under any such section, or to review, modify, suspend, terminate, or set aside any such notice or order."

Plaintiff John Ponte was the manager of Ponte Investments, LLC. Verified Complaint, ECF No. 1 [hereinafter Compl.], ¶ 22. Between 2017 and 2019, Ponte Investments acted as an originator of potential loan applications for Independence Bank—specifically, its U.S. Small Business Administration loan program. *Id.* In February 2023, the FDIC issued a Notice of Charges alleging that Plaintiff had engaged in a pattern of misconduct in connection with that arrangement. *Id.* ¶¶ 17, 19; *see* Pl.'s Mot. for TRO, ECF No. 2 [hereinafter Pl.'s TRO Mot.], Ex. A, ECF No. 2-2 [hereinafter FDIC Notice], at 1–2, 5–16, 45–46. The Agency initially sought "an Order of Prohibition from Further Participation," "an Order to Pay in the amount of $74,000," and "an Order for Restitution in the amount of at least $326,000" against Plaintiff, FDIC Notice at 48, but later withdrew its claim for a civil penalty along with the associated Order to Pay, *see* Compl., Ex. 4, ECF No. 1-4 [hereinafter Suppl. FDIC Notice]. The matter is currently pending before an Administrative Law Judge ("ALJ"), and an administrative hearing is scheduled to begin on October 15, 2024. Compl. ¶¶ 24, 28, 61.

Plaintiff previously filed two separate actions to enjoin the FDIC's enforcement proceeding in the U.S. District Court for the District of Rhode Island. Compl. ¶¶ 33–35. Both were dismissed for lack of subject matter jurisdiction under § 1818(i)(1), and Plaintiff elected not to appeal either decision. *See Ponte v. FDIC*, 673 F. Supp. 3d 145 (D.R.I. 2023) ("*Ponte I*"); *Ponte v. FDIC*, No. 23-cv-165 (MSM), 2023 WL 6441976 (D.R.I. Oct. 3, 2023) ("*Ponte II*"); Pl.'s Reply Mem. to Defs.' Opp'n to Mot. for TRO, ECF No. 13 [hereinafter Pl.'s TRO Reply], at 7 (acknowledging that Plaintiff "elected not to pursue appeals of prior decisions to the First Circuit"); Pl.'s Response

in Opp'n to Defs.' Mot. to Dismiss the Compl., ECF No. 14 [hereinafter Pl.'s MTD Opp'n], at 10 (same).

Plaintiff then filed this action on August 15, 2024, seeking once more to enjoin the enforcement proceeding against him.  Compl. at 24.  Now before the court are two motions: (1) Plaintiff's motion for a temporary restraining order "staying the Administrative Proceeding before the FDIC and its ALJ," and (2) the FDIC's motion to dismiss for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim.  Pl.'s Mem. in Supp. of Pl.'s TRO Mot., ECF No. 2-1 [hereinafter Pl.'s TRO Mem.], at 22; FDIC's Combined Opp'n to Mot. for TRO and Mot. to Dismiss, ECF No. 9 [hereinafter Defs.' Opp'n], at 3.  For the reasons set forth below, the court denies Plaintiff's Motion for Temporary Restraining Order and grants the FDIC's Motion to Dismiss.

## II.

Motions for temporary restraining orders and preliminary injunctions are analyzed under the same standard.  *See, e.g.*, *McCray v. Biden*, 574 F. Supp. 3d 1, 7 (D.D.C. 2021); *Postal Police Officers Ass'n v. U.S. Postal Serv.*, 502 F. Supp. 3d 411, 418 (D.D.C. 2020); *Nguyen v. U.S. Dep't of Homeland Sec.*, 460 F. Supp. 3d 27, 33 (D.D.C. 2020).  These "extraordinary" remedies "should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion."  *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004) (citation omitted).  In order to obtain a temporary restraining order, a plaintiff must show, among other things, "a substantial likelihood of success on the merits."  *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (citation omitted).  "[T]he 'merits' on which [a] plaintiff must show a likelihood of success encompass not only substantive theories but also establishment of jurisdiction."  *Id.*

(citation omitted).   Accordingly, a plaintiff who fails to show a "substantial likelihood" of jurisdiction is not entitled to a temporary restraining order.   *See id.*; *McCray*, 574 F. Supp. 3d at 8.

The plaintiff also bears the burden of establishing jurisdiction when a defendant files a motion to dismiss under Rule 12(b)(1).   *Knapp Med. Ctr. v. Hargan*, 875 F.3d 1125, 1128 (D.C. Cir. 2017) (citation omitted).   This burden is lower to survive a motion to dismiss than to obtain a temporary restraining order.   *See Food & Water Watch*, 808 F.3d at 913 (stating that "an inability to establish a substantial likelihood of [jurisdiction]" at the pleadings stage "requires denial of the motion for preliminary injunction, not dismissal of the case," and applying the Rule 12(b)(1) standard to evaluate whether dismissal was warranted).   Under Rule 12(b)(1), the court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.   *Knapp Med. Ctr.*, 875 F.3d at 1128.   The court, however, "bear[s] an independent obligation to assure [itself] that jurisdiction is proper before proceeding to the merits." *Plains Com. Bank v. Long Fam. Land & Cattle Co.*, 554 U.S. 316, 324 (2008) (citing *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 94–95 (1998)).   Consequently, the factual allegations in the complaint "will bear closer scrutiny" on a Rule 12(b)(1) motion for lack of subject matter jurisdiction than on a Rule 12(b)(6) motion for failure to state a claim.   *Nat'l Ass'n for Latino Cmty. Asset Builders v. CFPB*, 581 F. Supp. 3d 101, 104 (D.D.C. 2022) (citation omitted). Moreover, when deciding a motion to dismiss on jurisdictional grounds, the court "may consider evidence outside the complaint."   *United States v. Emor*, 785 F.3d 671, 677 (D.C. Cir. 2015) (citing *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003)).

### III.

The FDIC primarily challenges this court's jurisdiction on grounds of issue preclusion. Because Plaintiff's prior suits were dismissed for want of subject matter jurisdiction under

§ 1818(i)(1), the FDIC contends, Plaintiff cannot relitigate that issue here.  *See* Defs.' Opp'n at 11–14.  In response, Plaintiff argues that (1) it would be unfair to apply issue preclusion against him, and (2) this case presents a second, non-precluded issue—whether § 1818(i)(1) is constitutional.  *See* Pl.'s TRO Mem. at 16, 20–22; Pl.'s TRO Reply at 1–9, 15–16; Pl.'s MTD Opp'n at 4–12, 19–20.  Neither argument succeeds.

### A. Issue Preclusion Bars Relitigation of Subject Matter Jurisdiction Under § 1818(i)(1).

Issue preclusion, also known as collateral estoppel, "serves to 'protect against the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions.'"  *Nat'l Ass'n of Home Builders v. EPA*, 786 F.3d 34, 41 (D.C. Cir. 2015) (alterations omitted) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)).  To that end, the doctrine "bars 'successive litigation of an issue of fact or law actually litigated and resolved' that was 'essential to the prior judgment, even if the issue recurs in the context of a different claim.'"  *Id.* (quoting *Taylor*, 553 U.S. at 892 & n.5).  Preclusion applies not only to issues going to the merits of the case, but also to threshold jurisdictional issues. *Id.* (explaining that a prior jurisdictional dismissal does not bar relitigation of the cause of action originally asserted, but typically precludes relitigation of the jurisdictional issues adjudicated).

A prior judgment has preclusive effect under three conditions: "(1) the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case; (2) the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case; and (3) preclusion in the second case must not work a basic unfairness to the party bound by the first determination."  *Martin v. Dep't of Just.*, 488 F.3d 446, 454 (D.C. Cir. 2007) (alterations omitted) (quoting *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992)).  In conducting this analysis, the court "does not review the

merits of the determinations in the earlier litigation," *Consol. Edison Co. of N.Y. v. Bodman*, 449 F.3d 1254, 1257 (D.C. Cir. 2006), and "even a 'patently erroneous' first judgment is insufficient to bar issue preclusion," *Canonsburg Gen. Hosp. v. Burwell*, 807 F.3d 295, 306 (D.C. Cir. 2015) (citation omitted).

There is no real dispute that the first and second requirements are satisfied here. The U.S. District Court for the District of Rhode Island considered, on a Rule 12(b)(1) motion to dismiss, "whether 12 U.S.C. § 1818(i)(1) divests this Court of subject matter jurisdiction to entertain [Plaintiff's] claims" for declaratory and injunctive relief. *Ponte I*, 673 F. Supp. 3d at 149–50. Upon finding that the requested relief would "affect" the FDIC enforcement proceeding, in contravention of § 1818(i)(1), the court dismissed Plaintiff's claims for lack of subject matter jurisdiction. *Id.* at 150–52.

Plaintiff then filed a second action to enjoin the enforcement proceeding following the Supreme Court's decision in *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), this time raising constitutional claims—including three of the claims raised here. *Compare Ponte II*, 2023 WL 6441976, at *1 & n.1 ("[Ponte] claims that (1) the FDIC is unconstitutionally structured because the President cannot remove a majority of its Board; (2) the administrative law judges used by the FDIC are unconstitutionally shielded from removal; and (3) the FDIC enforcement proceeding deprived him of his Seventh Amendment right to a jury trial."), *with* Compl. at 18 (Count I), 20 (Count II), 21 (Count III). The FDIC again moved to dismiss under Rule 12(b)(1), and the district court again ordered dismissal. *Ponte II*, 2023 WL 6441976, at *2. Specifically, the court rejected Plaintiff's assertion that *Axon* altered the jurisdictional analysis with respect to his constitutional claims and concluded that "§ 1818(i)(1) precludes this Court's jurisdiction over Mr. Ponte's claims, constitutional or otherwise." *Id.* There is thus no question that the same issue was

contested by the parties, submitted for judicial determination, and actually decided by a court of competent jurisdiction in the prior litigation.

Nor can there be any doubt that this issue was necessary to the court's judgment.  Indeed, it was the sole basis for dismissal in *Ponte II*.  *See Ponte II*, 2023 WL 6441976, at *2; *Scahill v. District of Columbia*, 271 F. Supp. 3d 216, 226 (D.D.C. 2017) (finding that standing was "actually and necessarily determined" where "the court dismissed the petition for review *because*—and only because—it concluded that [the plaintiff] lacked standing"), *aff'd*, 909 F.3d 1177 (D.C. Cir. 2018). Whether Plaintiff is barred from relitigating subject matter jurisdiction under § 1818(i)(1) therefore turns on the third requirement: whether it would be unfair to hold Plaintiff to the judgment in *Ponte II*.

The D.C. Circuit "limit[s] equitable exceptions to issue preclusion to certain limited circumstances": (1) "if there has been an intervening change in controlling legal principles"; (2) "if the party to be bound lacked an incentive to litigate in the first trial, especially in comparison to the stakes of the second trial"; and (3) "if the prior proceedings were seriously defective." *Canonsburg Gen. Hosp. v. Burwell*, 807 F.3d 295, 306 (D.C. Cir. 2015) (internal quotation marks and citations omitted).  None apply here.

*First*, Plaintiff points to the Supreme Court's decision in *SEC v. Jarkesy*, 144 S. Ct. 2117 (2024), as "an intervening change in controlling legal principles."  *See* Pl.'s TRO Reply at 5–7; Pl.'s MTD Opp'n at 7–9.  According to Plaintiff, *Jarkesy* "changed the atmosphere on the propriety of ALJ fact finding when large sums were being extracted from a defendant" and "repudiated" longstanding precedent allowing "administrative agencies to try common law claims before themselves without juries."  Pl.'s TRO Reply at 5–6; Pl.'s MTD Opp'n at 8–9.

Plaintiff conflates the threshold jurisdictional determination under § 1818(i)(1) with the ultimate merits determination under the Seventh Amendment.  The issue precluded here is whether a federal district court has the power to adjudicate constitutional claims challenging an administrative enforcement proceeding under § 1818(i)(1)—not whether the subject of that proceeding is entitled to a jury trial under the Seventh Amendment.  *Jarkesy* addressed only the latter; it said nothing about the former.  *See Jarkesy*, 144 S. Ct. at 2127 ("This case poses a straightforward question: whether the Seventh Amendment entitles a defendant to a jury trial when the SEC seeks civil penalties against him for securities fraud.").  Such a decision can hardly be characterized as "controlling" the jurisdictional analysis in this case.  Accordingly, *Jarkesy* cannot vitiate *Ponte II*'s preclusive effect.

*Second*, Plaintiff asserts that he has "greater incentives to pursue his rights than existed in his prior cases" because "the FDIC says it now seeks vastly greater penalties and punishments than it did when it filed its original Notice of Charges."  Pl.'s TRO Reply at 7; Pl.'s MTD Opp'n at 10.  This argument also misses the mark.  The standard is not whether a party has *greater* incentive to litigate the issue in the *present* case; it is whether a party *lacked* incentive to litigate the issue in the *prior* case.  *See Canonsburg*, 807 F.3d at 306 ("[I]n weighing a party's incentive to litigate, [the court] should be concerned with whether 'the losing party clearly lacked any incentive to litigate the point in the first trial, but the stakes of the second trial are of a vastly greater magnitude.'" (citation omitted)).

Plaintiff had every incentive to press the issue of subject matter jurisdiction in *Ponte II*.  For starters, it was an issue on which his entire action depended—indeed, it was the reason why his first action got dismissed.  Plaintiff thus well understood the issue's importance when he filed his second action, and it is the judgment in that action that binds the court here.

Furthermore, all three of Plaintiff's suits arose from the same enforcement proceeding, and Plaintiff has faced the same set of potential consequences throughout that proceeding—namely, a prohibition order and a monetary payment.  *See* Pl.'s TRO Mem. at 7–8 (acknowledging that "[t]here are two prior proceedings in federal court against the FDIC by Ponte on its illegal assertion of power over him"); FDIC Notice at 48 (initially seeking "an Order of Prohibition from Further Participation," "an Order to Pay in the amount of $74,000," and "an Order for Restitution in the amount of at least $326,000" against Plaintiff); Suppl. FDIC Notice (foregoing the Order to Pay).

To be sure, the potential payment is now higher.  *See* Defs.' Opp'n at 1 n.1 (indicating that "more than $4.5 million" is now sought in restitution because, "[s]ince the filing of the [Notice], the FDIC has identified many more borrowers that were charged the improper and excessive fees described in the Notice"); Pl.'s TRO Reply at 7 (citing this footnote); Pl.'s MTD Opp'n at 10 (same).  But a prohibition order is, in Plaintiff's own words, "the most severe sanction[] the FDIC can impose."  Pl.'s TRO Mem. at 4.  And the FDIC made clear from the outset that the amount of restitution sought depended on "the impermissible fees collected by [Plaintiff]," FDIC Notice at 16, and was therefore subject to change, *see id.* at 48 (seeking "an Order for Restitution in the amount of *at least* $326,000" (emphasis added)).  On this record, it cannot be said that Plaintiff lacked incentive to litigate the issue of subject matter jurisdiction in his prior cases, or that the stakes of this case are of "vastly greater magnitude."  *Martin*, 488 F.3d at 455 (citation omitted).[1]

---

[1] Plaintiff also asserts that the FDIC "enhance[d]" its claims by "argu[ing] that [Plaintiff] somehow 'defrauded' the United States Small Business Administration ('SBA'), over which it has no jurisdiction, but makes no similar claim in the charging document."  Pl.'s MTD Opp'n at 10; Pl.'s TRO Reply at 7.  Plaintiff, however, offers no explanation as to how the Agency's argument affects his incentive to litigate the issue of subject matter jurisdiction.  What's more, the only source Plaintiff cites to support this assertion is the FDIC's Notice of Charges, which was filed before the district court issued its decision in *Ponte I*, *see* 673 F. Supp. 3d at 149, and explicitly states that the "bridge loan scheme" in which Plaintiff allegedly participated "was a fraud on the SBA," FDIC Notice at 14.  This assertion therefore provides no basis for finding a change in Plaintiff's incentive to litigate, much less one that would warrant applying an exception to issue preclusion.

*Third*, Plaintiff has not identified any defects in the Rhode Island proceedings, let alone serious defects.

This court thus finds no "basic unfairness" in applying preclusion here.

Plaintiff nevertheless attempts to carve out an exception for two of his four claims. He contends, without citing any authority, that issue preclusion "cannot apply" to "Counts III and IV of the Complaint" because they "are either wholly new or completely changed because of intervening facts and changes of law." Pl.'s MTD Opp'n at 11. But that is not how issue preclusion operates. As its name indicates, the doctrine applies to issues, not claims. *Nat'l Ass'n of Home Builders*, 786 F.3d at 41 (explaining that issue preclusion bars successive litigation of an issue, "*even if the issue recurs in the context of a different claim*" (emphasis added) (citation omitted)). Consequently, the bare fact that this suit includes a new cause of action does not prevent this court from applying issue preclusion.[2]

In any event, Count III is not new. Plaintiff brought a Seventh Amendment claim as part of his second suit, and the court's jurisdiction to hear that claim remains unaffected by *Jarkesy*. *See supra* 6–8. As for Count IV, alleging a violation of Plaintiff's due process rights under the Fifth Amendment, Plaintiff offers no basis for differentiating this constitutional claim from those that were before the court in *Ponte II*. Nor does he explain how this claim would not "affect" the

---

[2] Plaintiff also suggests that issue preclusion does not apply to "a pure question of law." Pl.'s TRO Reply at 8; Pl.'s MTD Opp'n at 10. It is true that the D.C. Circuit has recognized an exception to issue preclusion for "unmixed questions of law." *Pharm. Care Mgmt. Ass'n v. District of Columbia*, 522 F.3d 443, 446 (D.C. Cir. 2008) (citing *United States v. Stauffer Chem. Co.*, 464 U.S. 165, 170–71 (1984)). But that exception is "narrowly limited." *Beverly Health & Rehab. Servs., Inc. v. NLRB*, 317 F.3d 316, 323 n.2 (D.C. Cir. 2003). "In cases involving mutual collateral estoppel, the exception applies only if the issue is one of law and the facts of the cases are substantially unrelated." *Pharm. Care Mgmt. Ass'n*, 522 F.3d at 446 (citations omitted). Here, however, all three actions arose from the same enforcement proceeding; the claims in this case are virtually identical to those in the second case; and Plaintiff has not identified any material fact that has changed since *Ponte II*. Because "the factual settings [are] so closely related, the exception simply does not apply." *Beverly Health*, 317 F.3d at 323 n.2; *cf. Campaign Legal Ctr. v. 45Committee, Inc.*, No. 23-7040, 2024 WL4439978, at *8 (D.C. Cir. Oct. 8, 2024) (declining to apply issue preclusion in part because "new facts materially bearing on the issue became known after the [prior] decision").

FDIC's enforcement proceeding and thereby fall outside the scope of § 1818(i)(1)'s jurisdictional bar.  On the contrary, Plaintiff affirmatively states that "the purpose and intent of this legal action is to prevent FDIC, its directors, and its administrative law judge from continuing an [allegedly] unconstitutional enforcement proceeding against [him]."  Compl. ¶ 5.  That is the very outcome § 1818(i)(1) forbids.  *See Ponte II*, 2023 WL 6441976, at *2 (ruling that "Congress [in § 1818(i)(1)] was explicit that district courts are not to 'affect' FDIC enforcement proceedings"); *Ridder*, 146 F.3d at 1039 (recognizing that § 1818(i)(1) "limit[s] the jurisdiction of courts to review ongoing administrative proceedings brought by banking agencies"); *Inv. Co. Inst.*, 728 F.2d at 524 (describing § 1818(i)(1) as a "sweeping prohibition on judicial interference with the exercise of FDIC powers").

This court will not allow Plaintiff a third bite at the apple.  It was his choice to forego an appeal in the prior litigation, and it is his burden to bear the consequences of his (in)action.  Because Plaintiff "has had ample opportunity to have his challenge[s] heard," the court "find[s] no circumstances sufficient to exempt him from the rules of preclusion."  *Martin*, 488 F.3d at 455.

### B.    Section 1818(i)(1) Is a Valid Exercise of Congress's Power to Define Federal Courts' Subject Matter Jurisdiction.

Plaintiff contends that this case raises a second issue to which preclusion does not apply: whether § 1818(i)(1) is constitutional.  As a preliminary matter, the court is skeptical that this constitutes a new "issue," which would not be bound by the court's previous finding of issue preclusion, rather than a new "argument," which would be.  *See Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) ("[O]nce an *issue* is raised and determined, it is the entire *issue* that is precluded, not just the particular arguments raised in support of it in the first case." (citing Restatement (Second) of Judgments § 27 cmt. c (Am. L. Inst. 1982) ("[I]f the issue was one of law, new arguments may not be presented to obtain a different determination of that

issue.")))  Circuit precedent dictates that "[p]reclusion applies if a later argument 'is related to the subject-matter and relevant to the issues that were litigated and adjudicated previously, so that it could have been raised.'" *GSS Grp. Ltd. v. Nat'l Port Auth. of Liberia*, 822 F.3d 598, 608 (D.C. Cir. 2016) (citation omitted).  Plaintiff himself frames this "issue" as a basis for establishing subject matter jurisdiction over his claims.  *See* Pl.'s TRO Mem. at 16; Pl.'s TRO Reply at 16; Pl.'s MTD Opp'n at 20.  Yet he puts forward no reason why he could not have challenged the statute's constitutionality in the Rhode Island litigation, and this court sees none.

In any event, this court has no trouble concluding that § 1818(i)(1) is constitutional.  "Only Congress may determine a lower federal court's subject-matter jurisdiction." *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004); *see* U.S. Const. art. I, § 8, cl. 9 (authorizing Congress "[t]o constitute Tribunals inferior to the supreme Court"); U.S. Const. art. III, § 1 (vesting the judicial power "in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish").  And "when it comes to jurisdiction, the Congress giveth and the Congress taketh away." *In re al-Nashiri*, 791 F.3d 71, 76 (D.C. Cir. 2015) (citing *Estep v. United States*, 327 U.S. 114, 120 (1946)).  So long as Congress does not transgress "constitutional bounds," it may "decide[] what cases the federal courts have jurisdiction to consider." *Bowles v. Russell*, 551 U.S. 205, 212 (2007); *accord Patchak v. Zinke*, 583 U.S. 244, 252 (2018) (plurality opinion).  "The federal courts have 'presumptive jurisdiction to inquire into the constitutionality of a jurisdiction-stripping statute.'" *Patchak v. Jewell*, 828 F.3d 995, 1001 (D.C. Cir. 2016) (alteration omitted) (quoting *Belbacha v. Bush*, 520 F.3d 452, 456 (D.C. Cir. 2008)), *aff'd sub nom. Patchak v. Zinke*, 583 U.S. 244 (2018); *accord Mark v. Republic of the Sudan*, 77 F.4th 892, 896 (D.C. Cir. 2023).

The sole constitutional provision Plaintiff invokes is the Seventh Amendment.  *See* Pl.'s TRO Reply at 2, 7, 15; Pl.'s MTD Opp'n at 9, 19; *see also* Pl.'s TRO Mem. at 22.  Specifically,

Plaintiff argues that § 1818(i)(1) violates the Seventh Amendment by "deny[ing] [Plaintiff] his jury rights."  Pl.'s TRO Reply at 15; Pl.'s MTD Opp'n at 19; *see* Pl.'s TRO Mem. at 22 ("1818(i)(1) cannot and does not trump a litigant's Seventh Amendment right to have his civil liability for penalties decided by a jury.").  Here again, Plaintiff conflates two distinct issues.  Stripping district courts of jurisdiction to hear Seventh Amendment challenges is simply not the same as stripping individuals of their Seventh Amendment right.  Section 1818(i)(1) accomplishes the former, not the latter.

What's more, Plaintiff does not identify a single case invalidating a jurisdiction-stripping provision on Seventh Amendment grounds.  He asserts that "[t]he combination of *Axon*[] and *Jarkesy* set[s] up a brand-new question of jurisdiction: . . . *whether it was constitutional to strip jury rights from [Plaintiff] even if that is what Congress intended*."  Pl.'s TRO Reply at 8–9; Pl.'s MTD Opp'n at 11.  But his reliance on those cases is misplaced, for neither addressed the validity of a jurisdiction-stripping provision.   In *Axon*, the Supreme Court considered whether the governing statutory review schemes did, in fact, displace district court jurisdiction over the claims presented; it never questioned the constitutionality of those schemes.  *See Axon*, 598 U.S. at 185 ("conclud[ing] that the review schemes set out in the Exchange Act and the FTC Act do not displace district court jurisdiction over [the plaintiffs'] far-reaching constitutional claims"); *accord Bohon v. FERC*, 92 F.4th 1121, 1124 (D.C. Cir. 2024) ("*Axon* clarified how courts should apply *Thunder Basin*'s three factors to assess if a statute implicitly strips jurisdiction over a particular claim.").   *Jarkesy* is even further afield—it did not address jurisdiction stripping at all. *See supra* 8.[3]

---

[3] Plaintiff accords substantial weight to the Court's statement in *Jarkesy* that "Congress may not avoid a jury trial by preventing the case from being heard before an Article III tribunal." Pl.'s TRO Reply at 7 (quoting *Jarkesy*, 144 S. Ct. at 2131); Pl.'s MTD Opp'n at 9 (same).  Plaintiff, however, omits a critical part of that statement.  The full statement

Finally, Plaintiff contends that "*no* court could *ever* vindicate a litigant's Seventh Amendment right" in light of § 1818(i)(1)'s jurisdictional bar, "because even on petition for review of a final FDIC order [under § 1818(h)(2)], the Court of Appeals would not be able to issue a declaratory judgment that jury-less trials before the FDIC are unconstitutional." Pl.'s TRO Mem. at 21–22 (citing 12 U.S.C. § 1818(h)(2)). A statute that forecloses judicial review altogether would undoubtedly raise constitutional concerns. *See Bartlett v. Bowen*, 816 F.2d 695, 697, 703 (D.C. Cir. 1987) ("[A] statutory provision precluding *all* judicial review of constitutional issues . . . would be an unconstitutional infringement of due process." (internal quotation marks and alteration omitted)); *Ramallo v. Reno*, 114 F.3d 1210, 1214 (D.C. Cir. 1997) ("A statute that removes jurisdiction from all courts to vindicate constitutional rights poses serious constitutional objections." (emphasis omitted) (citing *Bartlett*, 816 F.2d at 703)). But that is not this statute.

Section 1818(i)(1) precludes judicial review "except as otherwise provided in this section or under section 1831*o* or 1831p-1 of this title." 12 U.S.C. § 1818(i)(1). That carveout includes § 1818(h)(2), which—like many statutory schemes—postpones judicial review until the agency action becomes final and channels such review to the federal courts of appeals. *See Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 38 (1991) ("[Section] 1818(h) authorizes court of appeals review of final [agency] orders on the application of an aggrieved party."); *see also Marcum v. Salazar*, 694 F.3d 123, 128 (D.C. Cir. 2012) ("It is well understood that there is a 'strong presumption' that judicial review of administrative action is available only

---

reads: "But this case does not fall within the exception, so Congress may not avoid a jury trial by preventing the case from being heard before an Article III tribunal." *Jarkesy*, 144 S. Ct. at 2131. The exception referenced is the "public rights" exception to Article III jurisdiction, under which Congress may assign a matter to an agency for adjudication without a jury, consistent with the Seventh Amendment. *Id.* As Plaintiff's own briefing acknowledges, that exception goes to the merits of his Seventh Amendment challenge—i.e., whether he is entitled to a jury trial because the FDIC seeks restitution against him for claims allegedly sounding in fraud. *See* Pl.'s TRO Reply at 20–22; Pl.'s MTD Opp'n at 24–26. It thus has no bearing on Congress's power to limit district courts' jurisdiction to hear such challenges in the first place.

after a challenged action is 'final.'" (quoting *Bell v. New Jersey*, 461 U.S. 773, 778 (1983))); *Axon*, 598 U.S. at 191–92 (observing that "many review schemes—involving not only agency action but also civil and criminal litigation—require parties to wait before appealing, even when doing so subjects them to 'significant burdens,'" and emphasizing that "will remain [true]" after *Axon*).

Pursuant to § 1818(h)(2), the federal court of appeals "in which the home office of the depository institution is located" (here, the First Circuit) or the D.C. Circuit may "affirm, modify, terminate, or set aside, in whole or in part, the order of the agency." 12 U.S.C. § 1818(h)(2). Section 1818(h)(2) further provides that review of the agency's order shall be governed by the Administrative Procedure Act ("APA"). *Id.* (citing 5 U.S.C. § 701 *et seq.*). The APA, in turn, authorizes courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B); *see Trudeau v. FTC*, 456 F.3d 178, 188 (D.C. Cir. 2006). Plaintiff is therefore free to file a petition for review raising a constitutional challenge should the FDIC proceeding culminate in an adverse order. *See, e.g.*, *Landry v. FDIC*, 204 F.3d 1125, 1128, 1130 (D.C. Cir. 2000) (considering Appointments Clause challenge on petition for review of FDIC removal and prohibition order).

Apparently conceding this point, Plaintiff argues in his reply brief that judicial review would come too late, given the "irreparable" nature of his injury. *See* Pl.'s TRO Reply at 15–16; Pl.'s MTD Opp'n at 19–20. That argument is likewise unavailing. It is well-established that the harm resulting from the denial of a jury trial can be remedied on appeal, even after the case has already been tried—the reviewing court simply orders a new trial. *See, e.g.*, *Tull v. United States*, 481 U.S. 412, 415, 427 (1987) (remanding after bench trial upon finding Seventh Amendment violation); *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 37, 64–65 (1989) (same); *Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 146 F.3d 983, 986–87, 994 (D.C. Cir. 1998) (same);

*Brown v. Sandimo Materials*, 250 F.3d 120, 122, 125–26, 130 (2d Cir. 2001) (same); *Solis v. Cnty. of Los Angeles*, 514 F.3d 946, 948, 953–54 (9th Cir. 2008) (same); *see also Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 552–53 (1990) (observing that "in cases involving a wrongful denial of a petitioner's right to a jury trial on legal issues," the Court "ha[s] reversed and remanded each case in its entirety for a trial before a jury," and ultimately "requir[ing] a new trial in this case").

The D.C. Circuit's unpublished decision in *Jolley v. United States*, No. 21-5181, 2024 WL 1521633 (D.C. Cir. Apr. 9, 2024), does not counsel a different conclusion.  *See* Pl.'s TRO Reply at 10; Pl.'s MTD Opp'n at 11–13.  There, the plaintiff filed two administrative appeals with the Merit Systems Protection Board ("MSPB")—one asserting employment discrimination claims against his federal employer, which the Uniformed Services Employment and Reemployment Rights Act ("USERRA") required be brought before the MSPB, and the other challenging the MSPB's Administrative Judges under the Appointments Clause.  *Jolley*, 2024 WL 1521633, at *2.  While those appeals were pending, Jolley filed suit in federal district court, alleging that USERRA's tiered system of review violated the Equal Protection Clause, the MSPB and its Administrative Judges were unconstitutionally exercising Article III power, and the MSPB's Administrative Judges were appointed in contravention of the Appointments Clause.  *Id.*  The district court ruled that USERRA's review scheme precluded it from exercising jurisdiction over those claims and dismissed Jolley's suit for lack of subject matter jurisdiction.  *Id.*  Jolley then appealed that ruling to the D.C. Circuit.  Before the court could decide his appeal, however, the MSPB resolved his claims and the administrative proceedings concluded.  *Id.* at *3.  The D.C. Circuit therefore dismissed the case as moot.  *Id.* at *1, *3.

Plaintiff suggests that his Seventh Amendment challenge, like Jolley's constitutional challenges, will be rendered moot unless judicial review is undertaken now, before the FDIC issues

16

its final order.  *See* Pl.'s TRO Reply at 10 ("[A]fter the administrative proceeding has been completed, then the case is moot."); Pl.'s MTD Opp'n at 13 (same).  But *Jolley* is of no moment here.  To state the obvious, that case did not involve a Seventh Amendment challenge.

*Jarkesy* did, and the Supreme Court made no mention of mootness.  Instead, it went straight to the merits, apparently satisfied of its jurisdiction.  *See FBI v. Fikre*, 601 U.S. 234, 244 (2024) (stressing that "a federal court's duty to ensure itself of Article III jurisdiction . . . persists throughout the life of the proceedings").  The SEC in *Jarkesy*, like the FDIC in this case, initiated an enforcement action and adjudicated the matter in-house.  *Jarkesy*, 144 S. Ct. at 2124–25. Judicial review did not occur in the court of appeals until after the SEC released its final order.  *Id.* at 2127; *see Jarkesy v. SEC*, 34 F.4th 446, 450 (5th Cir. 2022) (noting that the petitioners were required "to continue with the agency proceedings and petition the court of appeals to review any adverse final order"), *aff'd*, 144 S. Ct. 2117 (2024).  In Plaintiff's view, that review came too late— the subjects of the enforcement action had been deprived of their right to a jury trial, that harm was irremediable, and any Seventh Amendment challenge was rendered moot because the administrative proceeding had concluded.  Yet the Supreme Court held no such thing.  Consistent with longstanding precedent, it remanded the case for further proceedings upon concluding that the respondents were entitled to a jury trial.  *Jarkesy*, 144 S. Ct. at 2139; *see supra* 15.

At bottom, Plaintiff claims he is entitled to judicial review at the time and place of his choosing. That is not the scheme Congress enacted, and in the absence of any constitutional transgression, it is not the province of this court to second-guess Congress's decision.  *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978) ("The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded."); *Knapp Med. Ctr.*, 875 F.3d at 1131 ("Congress has undoubted power to restrict the jurisdiction of

the lower federal courts and, when it does so, we need only determine the scope of the restriction.").

## IV.

The court denies Plaintiff's Motion for Temporary Restraining Order, ECF No. 2, and grants the FDIC's Motion to Dismiss, ECF No. 9, for want of subject matter jurisdiction. A final, appealable order accompanies this Memorandum Opinion.

Dated: October 11, 2024

_____
Amit P. Mehta
United States District Judge